F I L E D
United States Court of Appeals
Tenth Circuit

JUL 2 1997

PATRICK FISHER
Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

          Plaintiff-Appellee,

v.

DEANDRE L. GILKEY,

          Defendant-Appellant.

No. 96-3316

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 96-CR-10042)

Submitted on the briefs:

Jackie N. Williams, United States Attorney, and Montie R. Deer, Assistant United
States Attorney, Wichita, Kansas, for Plaintiff-Appellee.

Michael G. Katz, Federal Public Defender, and Susan L. Foreman, Assistant
Federal Public Defender, Denver, Colorado, for Defendant-Appellant.

Before **SEYMOUR,** Chief Judge, **PORFILIO** and **MURPHY,** Circuit Judges.

**MURPHY**, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. This court therefore honors the parties requests and orders the case submitted without oral argument.

Appellant DeAndre L. Gilkey appeals the sentence rendered by the United States District Court for the District of Kansas following his 1996 conviction for aiding and abetting Michael Peach in the commission of robbery in violation of 18 U.S.C. §§ 2 and 1951. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and affirms.

Gilkey argues that the district court erred twice. First, he argues that the court erred by imposing a four-level enhancement to his base offense level under United States Sentencing Guideline ("U.S.S.G.") § 2B3.1(b)(2) on the grounds that a dangerous weapon was "otherwise used" in the robbery. Second, he argues that the court miscalculated his criminal history in assessing too many points for a juvenile sentence of confinement, contrary to U.S.S.G. § 4A1.2(d)(2)(A).

Appellant's counsel below failed to lodge a specific objection based upon either of the issues now presented for the first time on appeal. Normally, such failure precludes appellate review. *See United States v. Ivy*, 83 F.3d 1266, 1294 (10th Cir. 1996). However, as this court has stated, "[W]e recognize a narrow exception and review a legal question involving application of the sentencing

guidelines for plain error." *United States v. Ciapponi*, 77 F.3d, 1247, 1252 (10th

Cir.), *cert. denied*, 116 S. Ct. 1839 (1996); *see* Fed. R. Crim. P. 52(b). "In order

to evoke this exception, 'the error must be particularly egregious, as well as

obvious and substantial,' and we will apply it 'solely in those circumstances in

which a miscarriage of justice would otherwise result.'" *Ivy*, 83 F.3d at 1295

(quoting *United States v. Saucedo*, 950 F.2d 1508, 1511 (10th Cir. 1991)).

Factual disputes not raised below are waived. *Ciapponi*, 77 F.3d at 1252.

## I. DANGEROUS WEAPON "OTHERWISE USED"

U.S.S.G. § 2B3.1 provides enhancements for various uses of a "firearm" or

a "dangerous weapon," as follows:

> (A) If a firearm was discharged, increase by 7 levels; (B) if a firearm
> was otherwise used, increase by 6 levels; (C) if a firearm was
> brandished, displayed, or possessed, increase by 5 levels; (D) if a
> dangerous weapon was otherwise used, increase by 4 levels; (E) if a
> dangerous weapon was brandished, displayed, or possessed, increase
> by 3 levels; . . .

U.S.S.G. § 2B3.1(b)(2).

The district court imposed a four-level enhancement under part (D), which

requires that a dangerous weapon was "otherwise used." *Id.* Gilkey argues that

the court's findings reflect that a weapon was "brandished," and that the court

thus should have imposed a three-level enhancement under part (E).

A dangerous weapon was "otherwise used" by an individual when his

conduct "did not amount to the discharge of a firearm but was more than

-3-

brandishing, displaying, or possessing a firearm or other dangerous weapon." U.S.S.G. § 1B1.1 cmt. 1(g). A dangerous weapon was "brandished" if it "was pointed or waved about, or displayed in a threatening manner." U.S.S.G. § 1B1.1 cmt 1(c).

At the sentencing hearing, the district court found that "[a]ccording to the presentence report, Michael Peach otherwise used a dangerous weapon, that is a beebee gun, semiautomatic pistol,[1] in robbing Jimmie's Diner on April 10, 1995, pointed the gun at two employees in the course of the robbery [sic.]." R. Supp. Vol. IV at 9. Gilkey's counsel below objected to the U.S.S.G. § 2B3.1 sentence enhancement on the basis that Gilkey did not know and could not have foreseen that Peach had the weapon when he entered the restaurant. Counsel did not object on the basis that Peach's conduct constituted "brandish[ing]" a dangerous weapon under U.S.S.G. § 2B3.1(b)(2)(E), rather than "otherwise us[ing]" a weapon under U.S.S.G. § 2B3.1(b)(2)(D). In response to counsel's objections, the court held that "it was reasonably foreseeable to [Gilkey] that Peach would use a weapon to threaten employees of the diner in the course of the robbery." *See* U.S.S.G. § 1B1.3 cmt. 2(b)(1). The district court also adopted the findings of the Pre-Sentence Report, stating: "The Court determines that the presentence

---

[1]Under the Sentencing Guidelines, a "BB" or pellet gun "is a dangerous weapon but not a firearm." U.S.S.G. § 1B1.1 cmt. 1(e).

investigation report and the previously stated findings are accurate and orders that those findings be incorporated [in its judgment]" R. Supp. Vol. IX at 14. The Pre-Sentence Report stated the following:

> Michael Peach[] entered Jimmie's Diner Restaurant, and confronted a waitress . . . . He grabbed her by the neck and pointed a gun to her head, demanding money. She indicated that he almost lifted her from her feet, placing her face almost directly in his. She advised him that she could not provide him with any money at which time he left her and grabbed the shift supervisor/manager . . . . He forced [him] to an office area, while pointing a gun at him, and demanded that he open the safe and provide money.

R. Supp. Vol. II at ¶ 10.

In light of the district courts' factual findings, including those made directly by the court and those it adopted from the Pre-Sentence Report, this court determines that Michael Peach "otherwise used" a dangerous weapon because his conduct amounted to more than "brandishing." *See* U.S.S.G. § 1B1.1 cmt 1(g) (explaining that a weapon was "otherwise used" if the conduct amounted to more than "brandishing"). Peach did not merely point, wave about, or display the weapon in a threatening manner. Instead, he (1) pointed it at the victims, (2) used it to threaten them, (3) pointed it at one victim's head while grabbing and lifting her by the neck and demanding money, and (4) grabbed another victim, forced him to an office area while pointing the gun at him, and demanded that he open the safe and provide money.

-5-

In *United States v. Roberts*, this court held that a criminal defendant "otherwise used," as opposed to merely "brandished," a knife when he approached his victim from behind while holding a knife in his right hand, put his right arm around the victim, and held the knife next to her face and neck while demanding money. 898 F.2d 1465, 1467, 1469-70 (10th Cir. 1990). The facts of this case are the substantial equivalent of the facts in *Roberts*, and thus require the same conclusion that the weapon was "otherwise used," rather than merely "brandished."

Other circuits have treated various kinds of conduct as constituting "otherwise using," as opposed to merely "brandishing," a dangerous weapon. In *United States v. Fuller*, the Ninth Circuit found that the defendant's conduct

> was more culpable than "brandishing" in two ways. First, the defendant . . . caus[ed] the gun to come in contact with the teller's head . . . . Second, the defendant used the gun to threaten the [victim] and to force her to get up off the floor. By pointing the firearm at the [victim] and explicitly threatening to kill her if she did not stand, the defendant's conduct exceeded mere "brandishing."

99 F.3d 926, 927 (9th Cir. 1996). The district court's findings in this case do not specifically reveal whether there was any physical contact between the gun and the victim. It is clear, however, that the gun was not only brandished, but also used to directly threaten the victims and to force them to move according to Peach's directions. Though the findings do not specifically reveal that Peach explicitly verbalized a threat to kill, they do reveal that he used the gun, in

-6-

connection with violent physical contact between himself and his victims, to threaten and to force movement.

In *United States v. Johnson*, the Third Circuit found that the defendant had "otherwise used," rather than merely "brandished," a dangerous weapon because he "actually leveled the gun at the head of the victim at close range and verbalized a threat to discharge the weapon."  931 F.2d 238, 240 (3d Cir.), *cert. denied*, 502 U.S. 886 (1991); *see also United States v. Seavoy*, 995 F.2d 1414, 1421-22 (7th Cir.) (defendant "otherwise used" weapon because he pointed gun at victim's faces and heads, threatened to kill, and directed them at gunpoint to lie face down on floor), *cert. denied*, 510 U.S. 954 (1993).  In the case at bar, not only did Peach point the weapon at one victim's head while at close range, he pointed it at her head while grabbing and lifting her by the neck and demanding money.  He grabbed another victim while pointing the gun at him as well, and forced him to move as directed and to participate in the robbery.  While the factual findings reveal no verbal threat, the essence of the conduct is similar to the facts in *Johnson*.  The *Johnson* court stated:

> The dictionary defines "brandish" as "to shake or wave (a weapon) menacingly," and gives as synonyms "flourish" and "wave." Webster's Third New International Dictionary 268 (1976).  Although the inclusion of "pointed" in the Guideline definition makes it clear that pointing a weapon at, for example, bank tellers or customers during a bank robbery is included in the term "brandish," we construe ["pointed"] in the context of the Guideline definition as denoting a generalized rather than a specific threat.

*Johnson*, 931 F.2d at 240. The facts of the case at bar, which include actual, physical seizing of the specific victim, the simultaneous pointing of the weapon at the victim, and the forced movement of the victim, indicate specific rather than general pointing of the gun. It does not matter whether the gun itself actually touched the victim. Thus, this court affirms the district court's imposition of a four-level enhancement on the grounds that the weapon was "otherwise used" in the robbery.

## II. CRIMINAL HISTORY CALCULATION

The Sentencing Guidelines provide the following instructions for calculating criminal history points for offenses committed by a juvenile defendant: "add 2 points . . . for each . . . juvenile sentence to confinement of at least sixty days." U.S.S.G. § 4A1.2(d)(2)(A); *see also* U.S.S.G. § 4A1.1(b).

The district court added six points to Gilkey's criminal history calculation based on three prior juvenile adjudications. The sentences given for each of these three adjudications included orders that Gilkey be taken into the custody of the Kansas juvenile system, and Gilkey was actually held in custody from July 29, 1992 to April 8, 1993.

The details of the crimes and punishments are as follows. The first juvenile adjudication, misdemeanor theft, was referred to the juvenile court on January 29, 1990, when Gilkey was 14. The second juvenile adjudication, auto burglary and

attempted misdemeanor theft, was referred on February 20, 1990, when Gilkey was 14.  On August 27, 1990, a sentence of probation with restitution was imposed for each of these first two offenses.  The probation for these first two adjudications, however, was revoked on July 29, 1992, and Gilkey was ordered into custody.  On November 3, 1992, when Gilkey was 17, he was referred to the juvenile court for his third juvenile adjudication, for carrying a concealed weapon.  A sentence of continued custody was imposed for this third adjudication.  Gilkey remained in custody until April 8, 1993.

Gilkey concedes that his confinement constituted a "juvenile sentence to confinement" for purposes of § 4A1.2(d)(2)(A).  *See* Appellant. Br. at 11; *see also United States v. Birch*, 39 F.3d 1089, 1095 (10th Cir. 1994) (holding defendant's placement into Kansas juvenile custody qualified as "confinement" within meaning of U.S.S.G. § 4A1.2(d)(2)(A)).[2]  He claims, however, that only

---

[2]In his Reply Brief, Gilkey argues that the third adjudication did not lead to an order of confinement which fit under § 4A1.2(d)(2)(A) because the order contained no specifically identifiable term.  Gilkey states "it is purely speculation to conclude that this third referral separately triggered an additional juvenile sentence of at least sixty days."  Appellant Reply Br. at 3.  This claim raises factual questions which are not reviewable, even for plain error.  *See United States v. Ciapponi*, 77 F.3d 1247, 1252 (10th Cir.), *cert. denied.*, 116 S. Ct. 1839 (1996).  Furthermore, neither of the orders of custody in the first two adjudications contained specific terms, yet Gilkey concedes that the confinement which resulted therefrom qualified under § 4A1.2(d)(2)(A). Additionally, he cites circuit authority which this court finds applicable to the order of continued custody in the third adjudication.  *See United States v. Birch*, 39 F.3d 1089, 1095 (10th Cir. 1994) (holding defendant's placement into Kansas juvenile custody

two points ought to have been added on the theory that his confinement from July 29, 1992 through April 8, 1993 constituted only one "sentence to confinement." Merely because Gilkey served one continuous period of confinement, however, does not mean that the sentences of confinement pronounced in each of the adjudications do not meet the requirements of U.S.S.G. § 4A1.2(d)(2)(A). Two points may therefore be added to the criminal history calculation for each.[3] Gilkey has not presented any sound reason to conclude that the orders of confinement given for the three juvenile offenses identified in the Pre-Sentence Report should not be deemed to separately trigger § 4A1.2(d)(2)(A), with two-point additions for each.

Gilkey does argue that the first offense should not have counted because the Pre-Sentence Report does not specifically note on the first offense that the defendant was "adjudicated delinquent," but does so note on the second and third offenses. Despite the absence of clear language identifying that the defendant was "adjudicated delinquent," the Report clearly identifies the dates of sentencing and describes the dispositions on this first offense. A sentence was imposed on August 27, 1990 with a disposition of "Probation with restitution," and on July

qualified as "confinement" within meaning of U.S.S.G. § 4A1.2(d)(2)(A)).

[3]The first two custody orders followed revocations of probation originally granted in the first two adjudications. The third order was for continued custody, following the third adjudication stemming from the offense committed while Gilkey was already in custody.

-10-

29, 1992 "[p]robation revoked and . . . custody ordered." [R. Supp. Vol. IV at ¶ 31.] It is an unwarranted stretch to infer, as Gilkey argues, that this first offense did not lead to an adjudication. Gilkey was specifically sentenced and eventually ordered into custody for the offense. Ultimately, however, these factual disputes were not raised below and are thus waived in this plain error review. *Ciapponi*, 77 F.3d at 1252.

Gilkey also argues that criminal history is not calculated based upon the number of juvenile court filings or proceedings. *See United States v. Wilson*, 41 F.3d 1403 (10th Cir. 1994). Gilkey's Pre-Sentence Report, however, does not reveal merely three filings or proceedings, but three orders of confinement resulting from three juvenile adjudications.

Accordingly, this court AFFIRMS the Appellant's sentence.