**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 22, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

PATRICK WAYNE MANNING,

Defendant-Appellant.

No. 04-5007

Northern District of Oklahoma

(D.C. No. 03-CR-25-C)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **MURPHY**, and **McCONNELL**, Circuit Judges.

The Defendant, Patrick Manning, appeals the district court's decision to adjust his criminal history category upward on the basis of a murder charge for which he was not tried. Mr. Manning raises two claims. First, he contends that evidence of his involvement in the murder was not reliable enough to support increasing his criminal history category from V to VI pursuant to U.S.S.G. §

---

[*]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). This case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

4A1.3. Second, Mr. Manning argues that this upward departure, pursuant to U.S.S.G. § 4A1.3, violates the Supreme Court's holding in *United States v. Booker*, 125 S.Ct. 738 (2005). We AFFIRM.

## I.

Mr. Manning pleaded guilty to one count of misappropriation by a fiduciary in violation of 38 U.S.C. § 6101(a). Applying the Guidelines, the presentence report recommended an offense level of 12 and a criminal history category of V, a combination that provides a sentencing range of 27 to 33 months. U.S.S.G. § 5A. The government requested that the court depart upward from a criminal history category of V to category VI because there was evidence to suggest that Mr. Manning committed the murder of Patricia Bruder in Tulsa, Oklahoma during May 1987.

Mr. Manning had been charged with this homicide in Oklahoma state court while he was incarcerated in the Kansas state prison system. The State of Oklahoma failed to comply with the Interstate Agreement on Detainers and, for this reason, the state court dismissed the charge. At sentencing in the instant case, the district court heard testimony from the police officers who investigated the Bruder murder and from witnesses who heard Mr. Manning admit to the crime. After two hearings, the district court found, by a preponderance of the evidence, that Mr. Manning had committed the murder and granted the motion for

upward departure. Under the Guidelines, a base offense level of 12 and criminal history category of VI provides a range of 30-37 months. U.S.S.G. § 5A. The district court sentenced Mr. Manning at the top of this range—37 months.

## II.

## A.

Mr. Manning's first argument is that the government did not present sufficiently reliable evidence of Mr. Manning's involvement in the Bruder murder to support an upward departure under U.S.S.G. § 4A1.3. Section 4A1.3(a)(1) provides that "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted." When reviewing departures under § 4A1.3, as with most other Guidelines questions, we review legal questions de novo and factual matters for clear error "giving due deference to the district court's application of the guidelines to the facts." *United States v. Doe*, 398 F.3d 1254, 1257 (10th Cir. 2005) (quoting *United States v. Tsosie*, 376 F.3d 1210, 1217-18 (10th Cir. 2004)). Mr. Manning's challenge to the reliability of the evidence is a purely factual question. He contends that inconsistencies in the testimony presented and the difficulty of recalling events that took place 16 years prior to the two sentencing hearings render the information unreliable. Our review of

these factual questions is limited to clear error, so we may reverse a finding only if it "was without factual support in the record or we are left with the definite and firm conviction that a mistake has been made." *United States v. Ryan*, 236 F.3d 1268, 1273 (10th Cir. 2001).

The government presented testimony from several witnesses. Charles Folks was a Tulsa Police Department Officer for 28 years and was with the robbery/homicide unit in 1987. He recounted his role in investigating the Bruder murder after reviewing contemporaneous reports. He testified that at approximately 8:40 p.m. on May 19, 1987, Ms. Bruder was working the checkout counter at a May's Drug Store. After hearing a gunshot, employees of the store rushed to the counter and found Ms. Bruder laying dead in a pool of blood with an entry wound just to the left of the tip of her nose. Investigators found a .380 caliber shell casing on the floor in front of the counter and two witnesses described seeing an African-American male running from the store.

Approximately one hour after the Bruder murder a robbery took place at Guy Henshall's Auto Parts Store. According to the clerk, the robber shot a bullet into the ceiling from a small, shiny, semiautomatic pistol with black grips. A .380 caliber shell casing was found on the floor and ballistics reports would later reveal that this casing came from a pistol with serial number T08207, the same pistol used in the Bruder murder. The clerk described the robber as an African-

American male approximately 15 to 18 years old and 5'8" to 5'9" in height. Mr. Manning is an African-American male who was 23 at the time of the murder and robbery and is 5'7" tall.

The investigation stalled until June 1988 when Investigator Folks learned that Victor J. Cooper was in custody in Oklahoma City and was willing to exchange testimony about the Bruder murder for more lenient treatment. Mr. Folks interviewed Mr. Cooper twice and the second interview was video recorded and transcribed; the videotape was played for the district court and the transcript was admitted into evidence. In this second interview, Mr. Cooper stated that Mr. Manning admitted to robbing a Guy Henshall's and the Bruder murder. He stated that Mr. Manning confessed to the Bruder murder at the home of Mr. Cooper's girlfriend, Mary Hutton. Mr. Cooper recalled that Mr. Manning said he used a .380 magnum to shoot the woman after she twice refused to open the cash register. Mr. Cooper had seen Mr. Manning with a .380 chrome automatic pistol with black grips as the gun belonged to Manning's girlfriend, Jan Griffin, with whom Mr. Manning was living at the time of the Bruder murder.

Ms. Griffin, now deceased, was interviewed on June 25, 1988. The district court heard an audio tape of this interview and a transcript was admitted into evidence. She stated that she owned a .380 pistol with serial number T08207 during the time Mr. Manning lived with her and she said that she saw Mr.

Manning handling the gun on one occasion. The government admitted this gun during the sentencing hearing as Government's Exhibit 8.

Ms. Hutton testified at the sentencing hearing after reviewing an audio tape of a statement she made on July 14, 1992. She stated that while she was living with Mr. Cooper there was a night in 1987 when Mr. Manning came to the apartment and asked to speak to Mr. Cooper. Ms. Hutton recalled that Mr. Manning looked frightened and spoke with Mr. Cooper at the door. Ms. Hutton, who had answered the door, listened to their conversation from the top of the stairs. She stated that Mr. Manning confessed to killing someone at point blank range at a May's Drug Store. Mr. Manning said he shot her because she refused to open the cash register.

Mr. Cooper also testified at the sentencing hearing. He recanted his earlier statements regarding Mr. Manning's involvement in the murder and asserted that he lied to investigators in order to benefit from a plea deal. He testified that on the night Mr. Manning visited him in 1987, he told Mr. Cooper that he and "a friend" had robbed a May's Drug store and the "friend" had shot the clerk. R. Vol. IV at 20. Mr. Cooper was unable to provide a name or a description of this alleged perpetrator. After describing Mr. Cooper as "a really good liar," the district court found that his testimony recanting his earlier statement was "simply not believable." *Id.* at 58, 64. Moreover, after considering all the evidence the

district court felt "that evidence has clearly established" that Mr. Manning committed the murder and adjusted his criminal history accordingly. *Id.* at 64.

Mr. Manning argues that the information on which the district court relied was not reliable enough to justify its conclusion. He complains the testimony presented contained inconsistencies and, in some measure, required recollection from too long ago to be reliable. These arguments, however, are insufficient to meet the daunting standard for demonstrating that the district court committed clear error. To reverse we must have a firm and definite conviction that the district court misinterpreted the evidence presented. Mr. Manning's arguments about the reliability of the evidence do little to call the district court's careful consideration of the facts into doubt, and certainly do not leave us with a strong belief that a mistake has been made. For example, Mr. Manning complains that the ballistics report does not prove anything about the shooter. This is, of course, true, but the district court considered the ballistics reports as part of a wide array of circumstantial evidence suggesting that Mr. Manning committed the murder. The limitations of the ballistics report do not undermine the conclusions that the district court drew from other sources of evidence. Mr. Manning also argues that the district court improperly credited the testimony of Ms. Griffin, Mr. Cooper, and Ms. Hutton. But unless Mr. Manning demonstrates that this testimony was "unbelievable on its face," which he does not, the credibility determinations of

the district court are "virtually unreviewable" on appeal. *United States v. Virgen-Chavarin*, 350 F.3d 1122, 1134 (10th Cir. 2003). Accordingly, we disagree with Mr. Manning's contention that the district court clearly erred when it determined that he committed the murder of Ms. Bruder.

**B.**

Mr. Manning also argues that the imposition of the upward departure violated his Sixth Amendment rights as articulated by the Supreme Court in *United States v. Booker*, 125 S.Ct. 738 (2005). Mr. Manning did not raise this claim during sentencing so we review for plain error. *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc). To demonstrate plain error Mr. Manning must show that: (1) there was error, (2) that was plain, (3) that affected his substantial rights, and (4) failing to correct the plain error would affect the fairness, integrity, or public reputation of judicial proceedings. *United States v. Cotton*, 535 U.S. 625, 631-32 (2002). In analyzing plain error under *Booker* this Court has identified two types of errors, constitutional error and non-constitutional error. *See Gonzalez-Huerta*, 403 F.3d at 731-32. Both types of error are present in Mr. Manning's sentence, but neither meets the substantial showing necessary for a remand on plain error review. We begin by discussing constitutional error before turning to non-constitutional error.

In *Booker*, the Court held that, in the context of mandatory sentencing guidelines, the Sixth Amendment requires "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 125 S.Ct. at 756. The maximum sentence permitted by the facts admitted in Mr. Manning's guilty plea was 33 months. The district court determined that Mr. Manning was responsible for the murder of Ms. Bruder, although he was not convicted of this crime. On the basis of this finding the court increased his criminal history category, which permitted the court to sentence Mr. Manning to 37 months of imprisonment. This finding was not established by a jury's verdict or admitted by the defendant, and it was not a prior conviction. Accordingly, it violated the Sixth Amendment to sentence Mr. Manning for term over 33 months on this basis.

Our *Booker* cases establish that this type of error is plain. *See United States v. Dazey*, 403 F.3d 1147, 1174-75 (10th Cir. 2005). Our preferred approach in these types of cases is to follow the Supreme Court's example in *United States v. Johnson*, 520 U.S. 461, 469-70 (1997), and analyze the fourth prong of plain error before determining whether the error prejudiced the

defendant. *See, e.g.*, *United States v. Lawrence*, 405 F.3d 888, 906-08 (10th Cir. 2005).

The district court's decision to sentence Mr. Manning at the top of the adjusted Guidelines range essentially forecloses any showing that failing to remand his sentence would threaten the fairness, integrity, or public reputation of judicial proceedings. We addressed a virtually identical situation in *United States v. Mozee*, 405 F.3d 1082, 1091-92 (10th Cir. 2005), where we affirmed the district court's decision to sentence the defendant at the top of the Guidelines range despite the presence of constitutional *Booker* error. In *Mozee*, we reasoned that because the district court exercised its discretion under the Guidelines by maximizing the defendant's sentence, there was no reason to believe that the defendant would receive a lesser sentence under the post-*Booker* sentencing regime, under which sentencing courts apply the Guidelines in an advisory fashion. *Id.* (quoting *Booker*, 125 S.Ct. at 764). Likewise, in Mr. Manning's case there is little reason to believe that, under a system that grants more discretion to sentencing courts, Mr. Manning would receive a lesser sentence when the district court maximized the allowable sentence in the initial proceeding.[1] Accordingly,

---

[1] Indeed, because the district court had a firm belief that Mr. Manning perpetrated the murder of Ms. Bruder, it is possible that, had the judge not been tethered to the Guidelines framework, Mr. Manning might have received a sentence in substantial excess of 37 months.

there is little reason to believe that failing to remand would burden the fairness, integrity, or public reputation of judicial proceedings.

We also note that exercising our discretion under the fourth prong of plain error analysis to notice the constitutional error in Mr. Manning's case would introduce an anomaly to our *Booker* jurisprudence. We have held that *Booker* does not alter the ability of sentencing courts to increase a defendant's sentence on the basis of acquitted conduct as long as the government demonstrates responsibility for the acquitted conduct by a preponderance of the evidence. *United States v. Magallanez*, 408 F.3d 672, 683-85 (10th Cir. 2005). It would be odd if we refused to grant *Booker* remands for acquitted conduct, but allowed remands where, as is the case with Mr. Manning, the defendant was never tried. If Mr. Manning had gone to trial on the murder charge and been acquitted, the district court still could have predicated an increase in his sentence on this crime if the government demonstrated his guilt by a preponderance of the evidence. This principle reinforces our conclusion that a remand is not appropriate in this case.

There is also non-constitutional error present in Mr. Manning's sentence. Non-constitutional error occurs when a sentencing court applies the Guidelines in a mandatory fashion rather than in the advisory manner required by the remedial opinion in *Booker*. *See Gonzalez-Huerta*, 403 F.3d at 731-32. By treating the

calculated Guidelines range as mandatory the district court committed error that was plain. *Id.* at 732. As with constitutional *Booker* errors, our practice is to analyze the fourth prong of non-constitutional *Booker* error to determine if the prejudice analysis is necessary. *Id.* at 736.

The burden placed on Mr. Manning to satisfy the fourth prong of plain error in non-constitutional cases is high. He must demonstrate that the non-constitutional error that affected his sentence presents a "particularly egregious" circumstance. *United States v. Gilkey*, 118 F.3d 702, 704 (10th Cir. 1997). We will not remand for resentencing unless we believe that the non-constitutional error in Mr. Manning's case presents one of "those rare cases in which core notions of justice are offended." *Gonzalez-Huerta*, 403 F.3d at 739. Mr. Manning received a sentence at the top of the applicable Guidelines range, so the mandatory nature of the Guidelines could only have restrained the district court from imposing an even longer sentence. Mr. Manning points to nothing in the record that renders the decision to sentence him at the top of the range particularly egregious. *See Magallanez*, 408 F.3d 686 (refusing to remand because no record evidence supported a lower sentence). Thus, a remand to correct the non-constitutional error in his sentence would not be appropriate.

## III.

For the reasons stated above we AFFIRM the judgment of the district court.


Entered for the Court


Michael W. McConnell
Circuit Judge