**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**February 24, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ROBERT ORTIZ,

    Defendant - Appellant.

No. 22-2061
(D.C. No. 1:21-CR-00280-JB-1)
(D.N.M.)

_____

**ORDER AND JUDGMENT***
_____

Before **MORITZ**, **SEYMOUR**, and **EID**, Circuit Judges.
_____

Robert Ortiz challenges his 57-month sentence for carjacking on three

grounds. Finding no error, we affirm.

**Background**

In November 2020, Ortiz—unemployed, unhoused, and suffering from drug

addiction, posttraumatic stress disorder, anxiety, and depression—was inside a

laundromat trying to obtain quarters from the washing machines. As he was doing so,

Ortiz noticed a BMW parked outside. He approached the vehicle, opened the

driver's-side door, and demanded the keys from the passenger (who was the only

_____

    * This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. But it may be cited for its
persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

person in the vehicle at that time). When the passenger resisted, Ortiz pulled out a BB gun, pointed it at him, and again demanded the keys.[1] The passenger told Ortiz that he did not have the keys. Ortiz then returned to the laundromat, located the driver, and demanded the keys while pointing the BB gun at the driver's chin. The driver gave Ortiz the keys and told the passenger to exit the vehicle. Ortiz then drove away in the BMW. Although neither victim was injured, both believed Ortiz intended to shoot them.

Four days later, officers saw Ortiz run a red light while driving the BMW. Ortiz attempted to flee but was arrested after a short chase. The government indicted Ortiz for carjacking. He pleaded guilty without a plea agreement.

Before sentencing, the United States Probation Office prepared a presentence investigation report (PSR). As relevant here, the PSR recommended adding four levels to Ortiz's base offense level under the United States Sentencing Guidelines (the Guidelines or U.S.S.G.) because he "otherwise us[ed]" a dangerous weapon during the offense. U.S.S.G. § 2B3.1(b)(2)(D). The PSR set Ortiz's total offense level at 23, which, when combined with a criminal history category of III, produced an advisory Guidelines sentencing range of 57 to 71 months.

Ortiz objected to the four-level enhancement for otherwise using a dangerous weapon under § 2B3.1(b)(2)(D), arguing that his conduct warranted only a three-level enhancement under § 2B3.1(b)(2)(E) for brandishing a dangerous weapon. He

---

[1] Ortiz told officers that it was a BB gun, but the victims believed it was a real firearm; the actual weapon was never located.

accordingly advocated for a total offense level of 22 and a resulting Guidelines range of 51 to 63 months.

Before the sentencing hearing, the district court issued an order overruling Ortiz's objection. After surveying caselaw from the Tenth Circuit and virtually every other circuit, the district court explained that for the otherwise-used enhancement to apply, the threat posed to the victim must be specific rather than general. The district court then determined that Ortiz used the BB gun to create a specific threat by pointing the BB gun at the victims and demanding the keys to the BMW. Although the district court agreed with Ortiz that the cases affirming otherwise-used enhancements typically involved more egregious conduct, it rejected his argument that the Guidelines impose a "proportionality requirement" for sentencing. R. vol. 1, 45. The district court therefore concluded that Ortiz's conduct amounted to otherwise using the BB gun, meriting the four-level enhancement.

At his sentencing hearing, Ortiz argued for a sentence of 41 months, below his Guidelines range. In support, he cited negative experiences in his upbringing, his extensive substance-abuse history, and his need for treatment and education. He also reiterated that his conduct was less egregious than that typically captured by the otherwise-using enhancement in § 2B3.1(b)(2)(D), warranting a lower sentence. The district court ultimately imposed a sentence within, but at the bottom of, the Guidelines range—57 months in prison plus three years of supervised release—and later issued a written order memorializing and further explaining its sentencing decision.

Ortiz appeals, raising three issues.

## Analysis

### I.    Otherwise Using a Dangerous Weapon

Ortiz first argues that the district court erred in applying the four-level enhancement under § 2B3.1(b)(2)(D) for "otherwise us[ing]" a dangerous weapon during the offense. In his view, he should have only received a three-level enhancement for "brandish[ing]" under § 2B3.1(b)(2)(E). "We review the factual findings underlying a district court's sentencing determination for clear error and review the underlying legal conclusions de novo." *United States v. Marrufo*, 661 F.3d 1204, 1206 (10th Cir. 2011) (italics omitted) (quoting *United States v. Hooks*, 551 F.3d 1205, 1216 (10th Cir. 2009)).

Section 2B3.1 incorporates the definitions for the terms *otherwise used* and *brandished* from U.S.S.G. § 1B1.1's application notes. *See* § 2B3.1 cmt. n.1. Those application notes define *otherwise used* as "conduct [that] did not amount to the discharge of a [dangerous weapon] but was more than brandishing, displaying, or possessing a . . . dangerous weapon." § 1B1.1 cmt. n.1(J). And *brandished* "means that all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person." § 1B1.1 cmt. n.1(C).

We distinguish between otherwise using a dangerous weapon and brandishing a dangerous weapon by looking at specificity of the threat—we will affirm the

4

otherwise-used enhancement when the defendant pointed a weapon at a victim to create a specific rather than general threat of harm. *See, e.g.*, *United States v. Gilkey*, 118 F.3d 702, 705 (10th Cir. 1997); *United States v. Rucker*, 178 F.3d 1369 (10th Cir. 1999).[2] For instance, in *Gilkey*, the defendant robbed a diner and pointed his weapon directly at various victims while making various demands:

> [H]e (1) pointed [the weapon] *at* the victims, (2) used it to threaten them, (3) pointed it *at* one victim's head while grabbing and lifting her neck and demanding money, and (4) grabbed another victim, forced him to an office area while pointing the gun *at* him, and demanded that he open the safe and provide money.

118 F.3d at 705 (emphases added). We held that the defendant's use of the gun to threaten the victims specifically and directly and to force them to move according to his instructions constituted conduct more culpable than brandishing, even though it was unclear whether physical contact between the gun and the victims occurred or whether the defendant verbalized a threat to kill. *Id.* In so doing, we explained that the "specific rather than general pointing of the gun" elevated the gun's use from mere brandishing to otherwise using. *Id.* at 706; *see also United States v. Roberts*, 898 F.2d 1465, 1469–70 (10th Cir. 1990) (holding that defendant otherwise used knife by placing it against victim's throat from behind while demanding money at

---

[2] The parties agree that these cases remain good law even though the definition of *brandished* was amended in 2000. The amendment did not impact our specific-versus-general framework, which we used both before and after the amendment. *Cf. United States v. Villar*, 586 F.3d 76, 89 & n.7 (1st Cir. 2009) (explaining that although some circuits previously used implicit-versus-explicit framework prior to amendment, majority of those have switched to specific-versus-general framework after amendment).

ATM). Two years later, we relied on *Gilkey* to similarly hold that a defendant had otherwise used a dangerous weapon when he "pointed a gun . . . *at* the [victims] while ordering them to comply with his demands." *Rucker*, 178 F.3d at 1371 (emphasis added).

Other circuits likewise "distinguish[] between the general pointing or waving about of a weapon, which amounts to 'brandishing,' and the pointing of a weapon at a specific victim or group of victims to force them to comply with the robber's demands." *United States v. Johnson*, 199 F.3d 123, 126 (3d Cir. 1999); *see also id.* (collecting cases, including *Gilkey*, from five circuits).[3] In fact, "[v]irtually all of the circuits to address the question have held that where a dangerous weapon is pointed at a person and some further verbal threat or order accompanies the pointing of the weapon to facilitate commission of the underlying crime," the otherwise-used enhancement should apply. *United States v. Yelverton*, 197 F.3d 531, 534 (D.C. Cir. 1999) (collecting cases, including *Gilkey*, from seven circuits). And as in this circuit, the rationale underlying this "majority view suggests that the key consideration is whether a gun (or other weapon) was pointed at a specific person in an effort to create fear so as to facilitate compliance with a demand, and ultimately to facilitate the commission of the crime." *Id.*

Notwithstanding this consensus, Ortiz contends that pointing a weapon at a

---

[3] Like our own pre-2000 caselaw, the cases cited in this paragraph remain good law after the 2000 amendment to the definition of *brandish* because they follow the specific-versus-general framework. *See, e.g., Villar*, 586 F.3d at 90.

victim, even coercively, constitutes only brandishing, not otherwise using. But Ortiz's only authority for this point is a dissent from the Ninth Circuit. *See United States v. Albritton*, 622 F.3d 1104, 1108–12 (9th Cir. 2010) (Berzon, J., dissenting). And Ortiz acknowledges our precedent and the weight of authority from other circuits holding that pointing a weapon to convey a specific threat can constitute otherwise using that weapon. We therefore reject Ortiz's argument that pointing a gun at a victim can never constitute otherwise using it.

Shifting gears, Ortiz concedes that pointing a weapon may sometimes constitute otherwise using that weapon, but he stresses that a defendant must do more than merely point a dangerous weapon for pointing to cross the line from brandishing into otherwise using. And in Ortiz's view, mere pointing is all he did here. But Ortiz did not merely point the BB gun. Instead, as the district court found and as the government emphasizes, he pointed the BB gun directly at the victims to force them to comply with his demands for the keys to the car. In particular, recall that when the passenger first resisted Ortiz's demands for the car keys, Ortiz pulled out the BB gun, pointed it at him, and demanded the keys a second time. And after learning that the keys were not in the car, Ortiz then located the driver, pointed the BB gun at his chin, and demanded the keys from him. In so doing, Ortiz conveyed implicit but specific threats that he would shoot them if they did not cooperate with his orders. *See United States v. Bolden*, 479 F.3d 455, 461 (6th Cir. 2007) (explaining that "by pointing a firearm at an individual and making a demand of that individual, a defendant communicates the implicit threat that if the individual does not comply with the

defendant's demands, the defendant will shoot the individual"). This is precisely the type of conduct that shifts a defendant's conduct from brandishing to otherwise using. *See Gilkey*, 118 F.3d at 705–06; *Rucker*, 178 F.3d at 1371; *Roberts*, 898 F.2d at 1470.[4]

To be sure, unlike some defendants in these authorities, Ortiz did not (1) make physical contact with the victims, (2) force the victims to physically move anywhere, (3) place his finger on the trigger of the BB gun, (4) swing it at them in a threatening manner, or (5) say anything explicitly threatening. But the otherwise-used enhancement does not turn on any of these particular facts. The relevant inquiry is whether Ortiz pointed the BB gun at the victims to create a specific threat of harm. And that he did. The district court therefore properly enhanced his sentence by four levels under § 2B3.1(b)(2)(D).

## II.    Overall Reasonableness of Sentence

Next, Ortiz challenges the reasonableness of his sentence. When reviewing a sentence, we "first ensure that the district court committed no significant procedural error." *Gall v. United States*, 552 U.S. 38, 51 (2007). And "[i]f the district court's

---

[4] Other circuits have reached similar conclusions on similar facts. *See, e.g.*, *United States v. Orr*, 312 F.3d 141, 144–45 (3d Cir. 2002) (pointing gun at victim while demanding money constituted otherwise using the weapon); *Bolden*, 479 F.3d at 461 (pointing gun at individual while making demand amounts to "more than merely displaying a firearm with an intent to intimidate (i.e., brandishing)"); *United States v. Taylor*, 135 F.3d 478, 482–83 (7th Cir. 1998) (poking gun into bank employee's back while directing her to hand over money constituted otherwise using the weapon); *Albritton*, 622 F.3d at 1107 (pointing pistol at bank teller and ordering her to get down constituted otherwise using weapon).

decision is 'procedurally sound,' we 'then consider the substantive reasonableness of the sentence imposed.'" *United States v. Lucero*, 747 F.3d 1242, 1246 (10th Cir. 2014) (quoting *Gall*, 552 U.S. at 51).

### A.    Procedural Reasonableness

Ortiz contends that his sentence is procedurally unreasonable. We would typically review such an argument for abuse of discretion. *United States v. Ortiz-Lazaro*, 884 F.3d 1259, 1262 (10th Cir. 2018). But as Ortiz acknowledges, because he did not raise any procedural challenge below, he must satisfy our plain-error standard on appeal. *Id.* We will reverse based on plain error only if "(1) an error occurred; (2) the error was plain; (3) the error affected . . . substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of a judicial proceeding." *United States v. Farley*, 36 F.4th 1245, 1250 (omission in original) (quoting *United States v. Wolfname*, 835 F.3d 1214, 1217 (10th Cir. 2016)).

Ortiz specifically argues that the district court failed to adequately explain its decision to deny his request for a variance. A district court must "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). But when a district court stays within the Guidelines, it "must provide only a general statement of its reasons" to satisfy § 3553(c). *United States v. Lente*, 647 F.3d 1021, 1034–35 (10th Cir. 2011) (quoting *United States v. Martinez-Barragan*, 545 F.3d 894, 903 (10th Cir. 2008)). This means that even though the district court must consider the sentencing factors in § 3553(a) when determining an appropriate sentence, the district court "need not explicitly refer to either the § 3553(a) factors or

9

respond to every argument for leniency that it rejects in arriving at a reasonable sentence." *Id.* (quoting *Martinez-Barragan*, 545 F.3d at 903). Further, "the district court may satisfy its obligation to explain its reasons for rejecting the defendant's arguments for a below-Guidelines sentence by" considering the defendant's arguments and indicating in some way that it "'did not rest on the [G]uidelines alone'" but instead "'considered whether the [G]uideline[s] sentence actually conforms, in the circumstances," to the § 3553(a) factors. *United States v. Wireman*, 849 F.3d 956, 958–59 (10th Cir. 2017) (quoting *Martinez-Barragan*, 545 F.3d at 903). "Such a 'functional rejection' of a defendant's arguments—as opposed to an explicit rejection—is entirely proper." *Id.* at 959 (quoting *Martinez-Barragan*, 545 F.3d at 903).

Here, the district court's oral pronouncement explained the basis for the sentence it imposed. To begin, the district court expressly discussed the § 3553(a) sentencing factors. It considered the nature and circumstances of the offense, observing that Ortiz was "a large guy" who pointed what appeared to be a real gun at the victims during the offense. App. vol. 3, 30; *see also* § 3553(a)(1). The district court also discussed Ortiz's history and characteristics, including his difficult childhood, his substance-abuse problems, and his criminal history. *See* § 3553(a)(1). Additionally, the district court acknowledged that the sentence should "promote respect for the law, provide just punishment, afford adequate deterrence both at [a] specific and general level," noting Ortiz's youth and the risk of recidivism given his criminal history. R. vol. 3, 30; *see also* § 3553(a)(2)(A). And in the district court's

view, a Guidelines sentence would avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. *See* § 3553(a)(6).

Moreover, the district court considered Ortiz's arguments for a below-Guidelines sentence. It acknowledged his "tough childhood" and agreed with him that he needed substance-abuse treatment. R. vol. 3, 29. The district court also noted that even though the otherwise-used enhancement applied, Ortiz's "conduct [wa]s not as egregious as some of the others that pick up" such enhancement. *Id.*

Nevertheless, Ortiz complains that the district court's "discussion does little to explain its decision not to grant a variance." Aplt. Br. 24. Yet the district court made clear that it had entertained Ortiz's arguments for a lower sentence, but after considering the § 3553(a) factors, it concluded that the mitigating factors were "not strong enough to take [the sentence] out of the [G]uideline[s] range." App. vol. 3, 30. This satisfies the district court's obligation to explain the reasons for rejecting Ortiz's arguments for a downward variance.

Ortiz also faults the district court for stating at the sentencing hearing that it had identified approximately 12 factors that applied "downward pressure" and 21 factors that put "upward pressure" on the sentence but waiting until its written sentencing opinion to list those factors. Aplt. Br. 23 (quoting App. vol. 3, 29). Yet the district court is not required to specifically recite every factor it considers in arriving at the chosen sentence; again, it only needs to provide a general statement of its reasons. *See Lente*, 647 F.3d at 1034. Ortiz attempts get around this well-

established rule by arguing that excluding this list from the oral pronouncement denied him the opportunity to object and be present at sentencing, but this argument is unavailing. To be sure, when oral and written orders conflict, "[t]he oral pronouncement controls because a 'defendant has the right to be present at sentencing.'" *United States v. Benvie*, 18 F.4th 665, 671 (10th Cir. 2021) (quoting *United States v. Barwig*, 568 F.3d 852, 857–58 (10th Cir. 2009)). But Ortiz identifies no clash between the oral pronouncement and the written order. Indeed, as the government observes, all 21 upward-pressure factors can be found in the district court's oral pronouncement. So can the 12 downward-pressure factors, even though the written order included more specific details about Ortiz's treatment and educational needs and his substance-abuse history. In other words, the district court's written order merely memorialized and provided a more detailed explanation of its oral pronouncement. We therefore reject Ortiz's argument that the district court failed to give adequate reasons for its sentence by failing to expressly list and number the 12 and 21 factors it had identified.[5]

Because the district court provided a general statement of its reasons and sentenced Ortiz at the bottom of his Guidelines range, Ortiz has failed to establish any error, much less a plain error that affects his substantial rights or the integrity of judicial proceedings. *See Farley*, 36 F.4th at 1250.

---

[5] Ortiz further argues that even if the written order properly elaborated the oral pronouncement, "it still does not justify the decision." Aplt. Br. 25. But because the district court's oral pronouncement adequately explained the basis for the chosen sentence, we need not address that argument.

### B.    Substantive Reasonableness

Ortiz also argues that his 57-month sentence is substantively unreasonable. Substantive reasonableness asks "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in [§ 3553(a)]." *United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1215 (10th Cir. 2008) (quoting *United States v. Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007)).

We apply an abuse-of-discretion standard when reviewing a sentence for substantive reasonableness, "a standard requiring 'substantial deference to district courts.'" *United States v. Friedman*, 554 F.3d 1301, 1307 (10th Cir. 2009) (quoting *United States v. Sells*, 541 F.3d 1227, 1237 (10th Cir. 2008)). A district court abuses its discretion only if it imposes a sentence that is "arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Sample*, 901 F.3d 1196, 1199 (10th Cir. 2018) (quoting *United States v. Sayad*, 589 F.3d 1110, 1116 (10th Cir. 2009)). Put differently, a sentencing decision is substantively unreasonable if it "'exceed[s] the bounds of permissible choice,' given the facts and the applicable law." *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007) (quoting *United States v. Ortiz*, 804 F.2d 1161, 1164 n.2 (10th Cir. 1986)). And because Ortiz's sentence falls within his Guidelines range, we presume his sentence is substantively reasonable. *See Alapizco-Valenzuela*, 546 F.3d at 1215.

Ortiz "may rebut this presumption by showing that his sentence is unreasonable in light of" the § 3553(a) factors. *Id.* Attempting to do so, Ortiz first argues that the district court erred by considering the seriousness of the offense, its

13

nature and circumstances, and his criminal history when analyzing the § 3553(a) factors because these factors were already accounted for by his Guidelines range. This is essentially an allegation of impermissible double-counting, but it lacks merit. As the government highlights, district courts must "begin all sentencing proceedings by correctly calculating the applicable Guidelines range" and then "consider *all* of the § 3553(a) factors." *Gall*, 552 U.S. at 49 (emphasis added). District courts are not required to ignore § 3553(a) factors that have some overlap with the Guidelines. On the contrary, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives, the one, at retail, the other at wholesale." *Rita v. United States*, 551 U.S. 338, 348 (2007). Thus, as we recently explained in rejecting a challenge to a district court's decision to impose an upward variance, "district courts have broad discretion to consider particular facts in fashioning a sentence under [§ 3553(a)], even when those facts are already accounted for in the advisory guidelines range." *United States v. Gross*, 44 F.4th 1298, 1304 (10th Cir. 2022) (quoting *United States v. Barnes*, 890 F.3d 910 (10th Cir. 2018)).

Here, the district court properly calculated Ortiz's Guidelines range and then considered the § 3553(a) factors in determining that a low-end Guidelines sentence was appropriate. That some of the factors relevant to determining the Guidelines range also played a role in the district court's overall § 3553(a) analysis does not create an abuse of discretion. And as the government observes, Ortiz identifies nothing unreasonable about the district court's finding that the seriousness and circumstances of his offense and his criminal history weighed in favor of a

Guidelines sentence.

Ortiz also contends the district court ignored the unwarranted sentencing disparity created by imposing a sentence within the Guidelines, taking issue with the district court's refusal to vary downward despite acknowledging that Ortiz's conduct was "not as egregious" as that of other defendants who receive the otherwise-using enhancement. Aplt. Br. 29 (quoting R. vol. 3, 29). According to Ortiz, the district court effectively failed to consider his disparity argument because, as he sees it, the district court gave this factor no weight. But as the government highlights, the district court *did* consider—and agree—that Ortiz's conduct was less egregious than that of some defendants who received an otherwise-used enhancement. Nevertheless, after considering the § 3553(a) factors, the district court determined that a Guidelines sentence was appropriate.

When, as here, "the balance struck by the district court among the factors set out in § 3553(a) is not arbitrary, capricious, or manifestly unreasonable, we must defer to that decision even if we would not have struck the same balance in the first instance." *Sells*, 541 F.3d at 1239. We therefore see no abuse of discretion in the district court's decision to impose a sentence at the bottom of Ortiz's Guidelines range.

**Conclusion**

Because Ortiz pointed a BB gun directly at two victims to force them to comply with his demands for the car keys, the district court did not err in applying the four-level enhancement under § 2B3.1(b)(2)(D) for otherwise using a dangerous

15

weapon. It also adequately explained its reasons for imposing the 57-month sentence, and Ortiz fails to rebut the presumption that his Guidelines sentence is substantively reasonable. We accordingly affirm.

Entered for the Court

Nancy L. Moritz
Circuit Judge