

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-2-1999

# United States v Johnson

Precedential or Non-Precedential:

Docket 98-2012

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"United States v Johnson" (1999). *1999 Decisions.* Paper 316.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/316

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 2, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-2012

UNITED STATES OF AMERICA

v.

KENNETH JOHNSON

        Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(D.C. Criminal No. 97-cr-00241-1)
District Judge: Honorable Clarence C. Newcomer

Submitted Under Third Circuit LAR 34.1(a)
September 30, 1999

BEFORE: NYGAARD, ALITO and ROSENN, Circuit Judges.

(Filed December 2, 1999)

Peter A. Levin, Esq.
1927 Hamilton Street
Philadelphia, PA 19130

Counsel for Appellant Kenneth
Johnson

Anthony J. Wzorek, Esq.
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

Counsel for Appellee United States
of America

OPINION OF THE COURT

NYGAARD, Circuit Judge.

Appellant, Kenneth Johnson, was convicted of two counts of conspiracy to interfere with interstate commerce by robbery, see 18 U.S.C. S 1951, and one count of use of a firearm during a crime of violence, see 18 U.S.C. S 924(c)(1).

The first robbery occurred on December 23, 1995, at Littman Jewelers in Cheltenham, Pennsylvania. An employee testified that he was at the front of the store placing jewelry in display cases when he saw three males enter the store (although more were implicated in this robbery). Two of the three, Nafis Murray and Darrell Williams, pleaded guilty to this robbery and testified against the third, appellant Johnson. They testified that Murray was armed with a bat, as was another co-defendant, William Cole. Cole stood near the entrance, while Johnson and Williams wielded sledgehammers to break open the jewelry display cases. After smashing the two jewelry display cases, they took diamond rings. During the robbery, Murray threatened to hit an employee with the baseball bat unless she put the phone down.

The second robbery took place on March 19, 1996, at the Best Products, Inc., store located in Hampton, Virginia. An employee there testified that he saw four males enter the

2

store. One of them put a gun to the employee's head and told him not to say anything. The other three broke open jewelry display cases and stole jewelry before fleeing. Three co-defendants, Nafis Murray, Darrell Williams, and Ferrus Riddick, pleaded guilty to this robbery and testified against the fourth, Johnson. Williams testified that it was he who put a gun, owned by Johnson, to a security guard's head while Johnson smashed a jewelry display case with a sledgehammer.

Johnson was tried for both robberies before a jury in the Eastern District of Pennsylvania. He was found guilty on all counts, and was sentenced to 146 months in prison. He appeals, arguing that the district court erred by: (1) enhancing his sentence four levels for use of a dangerous weapon during a robbery, see U.S.S.G. S 2B3.1(b)(2)(D); (2) declining to conduct an in camera review of the presentence reports for Murray and Williams to check for impeachment material; (3) restricting defense questioning of Murray and Williams regarding other robberies they have participated in; (4) ruling the government's failure to disclose certain exculpatory material under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) until after trial was harmless error; (5) admitting testimony of Murray and Williams when special treatment they received might amount to payment in violation of the criminal gratuity statute, 18 U.S.C. S 201(c)(2); (6) allowing testimony of an uncharged robbery allegedly involving Johnson; and (7) instructing the jury that it could consider Johnson's "immediate flight" following his indictment.

We review the court's factual findings for clear error and have plenary review over conclusions of law. Our review of a district court's interpretation of the sentencing guidelines is de novo. See United States v. Weadon, 145 F.3d 158, 159 (3d Cir. 1998). We review the court's decisions on in camera review, admission of evidence, and instructions to the jury for abuse of discretion. We will affirm.

I.

A.

The district court calculated Johnson's sentence using the 1997 Sentencing Guidelines, which provide a base

offense for robbery of 20. See U.S.S.G.S 2B3.1(a). This base level may be enhanced if a weapon was used during the robbery. U.S.S.G. S 2B3.1(b)(2) provides:

> (A) If a firearm was discharged, increase by 7 levels; (B) if a firearm was otherwise used, increase by 6 levels; (C) if a firearm was brandished, displayed, or possessed, increase by 5 levels; (D) if a dangerous weapon was otherwise used, increase by 4 levels; (E) if a dangerous weapon was brandished, displayed, or possessed, increase by 3 levels; or (F) if a threat of death was made, increase by 2 levels.

The terms "brandished," "dangerous weapon," and "otherwise used" are defined in the commentary to U.S.S.G. S 1B1.1. See U.S.S.G. S 2B3.1, Commentary, application note 1.

> (c) "Brandished" with reference to a dangero us weapon (including a firearm) means that the weapon was pointed or waved about, or displayed in a threatening manner.

> (d) "Dangerous weapon" means an instrument c apable of inflicting death or serious bodily injury. Where an object that appeared to be a dangerous weapon was brandished, displayed, or possessed, treat the object as a dangerous weapon.

> (g) "Otherwise used" with reference to a dan gerous weapon (including a firearm) means that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon.

U.S.S.G. S 1B1.1, commentary, application note 1.

When the district court enhanced Johnson's sentence four levels because he "otherwise used" a dangerous weapon pursuant to U.S.S.G. S 2B3.1(b)(2)(D), it only considered the conduct in the Littman Jewelers robbery, where no guns were used. Johnson argues that no enhancement was warranted because no dangerous weapons were used in this robbery, or in the alternative that the proper enhancement was three and not four levels under U.S.S.G. S 2B3.1(b)(2)(E) because he merely

4

"brandished" a sledgehammer, but did not "otherwise use" it during the robbery.

B.

As an initial matter, we reject Appellant's contention that a sledgehammer, wielded in the course of a robbery and used to smash open display cases in front of bystanders, cannot be considered a dangerous weapon. Under the circumstances, it clearly was "an instrument capable of inflicting death or serious bodily injury." U.S.S.G. S 1B1.1, application note 1(d). So was the baseball bat carried by one of Johnson's co-defendants. Appellant argues that because any object may conceivably be used to harm someone, we would render the definition of a "dangerous weapon" devoid of meaning if we extended it to a sledgehammer. However, a common-sense look shows this is not true.

A baseball bat, carried onto the baseball diamond, is clearly a sport implement and not a dangerous weapon. Likewise, a sledgehammer, properly employed on a construction site, is clearly a tool. But when these items are carried into the scene of a robbery, and employed to threaten bystanders, they just as clearly become dangerous weapons. Put another way, does it matter if a robber uses a switch-blade knife or a steak knife? We think not and opine that the distinction would likely not be significant to any potential victims of either. Both are dangerous weapons when used in a robbery. In the context of this case, the sledgehammer and the baseball bat both fit the definition of a "dangerous weapon" contained in U.S.S.G.S 1B1.1, application note 1(d), and the circumstances demonstrate it was reasonable for the District Court to treat them as such.

C.

We turn next to the question of whether these dangerous weapons were merely "brandished," justifying a three level sentence enhancement under S 2B3.1(b)(2)(E), or whether they were "otherwise used" in the course of the robbery, warranting a four level enhancement under S 2B3.1(b)(2)(D). Whether Johnson's sentence should have been enhanced

5

by three or four levels depends on how one interprets the Guidelines.

Courts of Appeals have generally distinguished between the general pointing or waving about of a weapon, which amounts to "brandishing," and the pointing of a weapon at a specific victim or group of victims to force them to comply with the robber's demands. In essence, "brandishing" constitutes an implicit threat that force might be used, while a weapon is "otherwise used" when the threat becomes more explicit. See United States v. Gilkey, 118 F.3d 702, 705-06 (10th Cir. 1997) (gun was "otherwise used" to force victims to move, despite lack of evidence regarding physical contact with victims or use of verbal threats); United States v. Elkins, 16 F.3d 952 (8th Cir. 1994) (knife was "otherwise used" to force victim to move); United States v. Hamilton, 929 F.2d 1126, 1130 (6th Cir. 1991) (knife was "otherwise used" when intentionally held to victim's throat as robber made verbal threats); United States v. Burton, 126 F.3d 666, 669 (5th Cir. 1997) (gun was "otherwise used" when pointed at victims during bank robbery to ensure their compliance). But see United States v. Matthews, 20 F.3d 538 (2d Cir. 1994) (pointing firearms at customers during bank robbery, ordering them tofloor, and threatening to kill them if they did not comply amounted to "brandishing").

We too, have considered the question of whether a firearm was "otherwise used" during a robbery, or merely "brandished." We reasoned that a firearm is "brandished" when it is waved about in a generally menacing manner during a robbery. See United States v. Johnson, 931 F.2d 238, 240-41 (3d Cir. 1991). When, however, that firearm is leveled at the head of a victim, and especially when this act is accompanied by explicit verbal threats, we have had no difficulty determining that the firearm was"otherwise used." Id.

We agree with the Court of Appeals for the First Circuit, which held that

> a person may "brandish" a weapon to "advise" those concerned that he possesses the general ability to do violence, and that violence is imminently or

> immediately available. . . . Altering this general display
> of weaponry by [for instance] specifically leveling a
> cocked firearm at the head or body of a bank teller or
> customer, ordering them to move or be quiet according
> to one's direction, is a cessation of "brandishing" and
> the commencement of "otherwise used."

United States v. LaFortune, ___ F.3d ___, No. 99-1059, 1999 WL 701674, at *4 (1st Cir. Sept. 15, 1999). Pointing a weapon at a specific person or group of people, in a manner that is explicitly threatening, is sufficient to make out "otherwise use" of that weapon. We hold this is true when any dangerous weapon is employed: It need not be a firearm.

Other courts have held that verbal threats are not always required to make out "otherwise use" of a weapon. Some have held that explicit threats may be made either verbally, or through conduct alone. See United States v. Nguyen, ___ F.3d ___, No. 98-40066, 1999 WL 740439, at * 5 (5th Cir. Sept. 22, 1999). Here, however, Johnson's sentence was properly enhanced even were we to require verbal threats. In addition to Johnson's use of a sledgehammer to smash open display cases, one of the co-defendants wielded a baseball bat in a threatening manner and testified that he used it to intimidate people in the store. This co-defendant testified that on one occasion he held the baseball bat up high and told an employee to put the phone down or he would break her neck, or "knock her damn head off." Johnson's co-defendant with the baseball bat thus clearly "otherwise used" that dangerous weapon to facilitate the robbery when he told a specific employee to put the phone down, and backed up his command by raising the bat and threatening to harm or kill her with it.

The District Court was entitled, for sentencing purposes, to consider Johnson's behavior and that of his co-defendants. See United States v. Nguyen, ___ F.3d ___, No. 98 40066, 1999 WL 740439, at *4 (5th Cir. Sept. 22, 1999) (Sentencing adjustments may include "all reasonably foreseeable acts and omissions in furtherance of the jointly undertaken criminal activity.") (citing clarification in U.S.S.G. S 1B1.3(a)(1)(B), effective Nov. 1, 1998); United States v. Missick, 875 F.2d 1294, 1301 (7th Cir. 1989)

7

("[Defendant] may still have been properly subject to an enhanced sentence based on the possession of firearms by [co-defendants] without individually possessing a firearm under the theory of co-conspirator liability.") (citing Pinkerton v. United States, 328 U.S. 640, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946)). Cf. United States v. Gonzalez, 918 F.2d 1129, 1135 n.3 (3d Cir. 1991) (noting in context of finding criminal liability that facts of case would also allow sentence enhancement of one defendant based on firearm possession by another). We hold that from the combination of factors we have described, a dangerous weapon was "otherwise used" at the robberies, giving sufficient support to the District Court's decision to enhance Johnson's sentence to level 4.

In addition, the District Court may enhance Johnson's sentence because he "otherwise used" a weapon, even though he did not make the explicit verbal threat, because his conduct was "equally coercive and threatening." LaFortune, 1999 WL 701674 at *3, citing United States v. Wooden, 169 F.3d 674, 676 (11th Cir. 1999). Johnson did not merely stand at the front of the store holding the sledgehammer for some legitimate purpose. He used it to smash jewelry cases in front of customers and employees, while his co-defendant held a baseball bat aloft to"break necks" or "knock heads off." We have no doubt that the customers and employees might well have felt coerced and threatened by this conduct. And, we have no doubt at all, that it amounted to more than the mere brandishing, display or possession of a dangerous weapon. See U.S.S.G. S 1B1.1, application note 1(g). The District Court was entitled to give, and Johnson richly deserved, the four level enhancement he received under U.S.S.G. S 2B3.1 (b)(2)(D).

II.

None of the remaining issues raised have merit, and we will dispose of them summarily. First, the government provided Johnson with large amounts of potentially exculpatory material prior to trial, as required by Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). The defense was allowed to cross-examine prosecution witnesses on many areas affecting credibility.

8

Despite an unexplained late Brady disclosure, there is no reasonable probability that it would have changed the trial's outcome. See United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383-84, 87 L. Ed. 2d 481 (1985). The additional impeachment evidence would not have put the whole case in such a different light as to undermine confidence in the verdict, and would have been merely cumulative. See Hollman v. Wilson, 158 F.3d 177 (3d Cir. 1998), cert. denied, ___ U.S. ___, 119 S. Ct. 1035, 143 L. Ed. 2d 44 (1999). Thus, the decision on whether or not to hold an in camera review of this material was well within the district court's discretion.

Next, Johnson's arguments regarding the criminal gratuity statute, 18 U.S.C. S 201 (c) (2), are without foundation, and we have already rejected them in United States v. Hunte, ___ F.3d ___, No. 97-1987, 1999 WL 649627 (3d Cir. Aug. 26, 1999).

The government offered evidence of the prior robbery for the purpose of showing a common plan under Fed. R. Evid. 404(b). This is a legitimate reason to introduce this evidence, and the prior robbery was clearly established. We favor the admission of such evidence, "if relevant for any other purpose than to show a mere propensity or disposition on the part of the defendant to commit the crime." United States v. Long, 574 F.2d 761, 766 (3d Cir.), cert. denied, 439 U.S. 985, 99 S. Ct. 577, 58 L. Ed. 2d 657 (1978); see also United States v. Simmons, 679 F.2d 1042, 1050 (3d Cir. 1982), cert. denied, 462 U.S. 1134, 103 S. Ct. 3117, 77 L. Ed. 2d 1370 (1983). Johnson's bad acts were used for a proper purpose that was not substantially outweighed by a risk of unfair prejudice under Fed. R. Evid. 403. "In weighing the probative value of evidence against the dangers . . . in Rule 403, the general rule is that the balance should be struck in favor of admission." United States v. Dennis, 625 F.2d 782, 797 (8th Cir. 1980). Once again, the decision whether to admit it was within the district court's considerable discretion.

Finally, there was both direct and circumstantial evidence of Johnson's immediate flight. Following Johnson's indictment, Special Agent Stephen J. Heaney of the FBI began searching for him. While visiting the homes of

Johnson's friends and relatives, Agent Heaney advised these people that a warrant had been issued for Johnson. Indeed, appellant's own words indicated a conscious awareness of the crimes with which he was charged –– he admitted to one David Barberich, a police dispatcher, that he knew he was sought by the FBI. Johnson even told Barberich that Agent Heaney was the contact person for his case. Thus, it was well within the district court's discretion to give the immediate flight instruction.

III.

In sum, we reject appellant's arguments on every allegation of error and conclude that the District Court did not err. We will affirm.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit