**UNITED STATES of America**

v.

**Kevin ABBOTT.**

**Criminal No. 05–333.**

United States District Court, E.D. Pennsylvania.

Sept. 11, 2006.

Stuart Patchen, Defender Association of Philadelphia, Kai N. Scott, Federal Divi-

sion Defender's Assoc. of Philadelphia, Philadelphia, PA, for Defendant.

Frederick J. Stollsteimer, Jack Stollsteimer, U.S. Attorney's Office, Philadelphia, PA, for Plaintiff.

## MEMORANDUM OPINION AND ORDER

RUFE, District Judge.

Before the Court are Kevin Abbott's ("Defendant") Motion for Judgment of Acquittal or a New Trial Pursuant to Federal Rules of Criminal Procedure 29 and 33,[1] Defendant's Supplemental Motion for Judgment of Acquittal or a New Trial Pursuant to Federal Rules of Criminal Procedure 29 and 33,[2] and the government's response thereto.[3] In his motions, Defendant argues that a judgment of acquittal must be granted on the basis that Defendant's mere presence at the scene of the criminal conduct cannot support his convictions, and that a new trial must be granted because the Court erred when it (1) admitted prejudicial evidence concerning a prior arrest; (2) gave a limiting instruction on evidence admitted under Federal Rule of Evidence 404(b); and (3) admitted testimony regarding items in Defendant's possession after his arrest.

## I. Factual Background and Procedural History

Between September 21, 2004 and September 23, 2004, Philadelphia police arranged for a confidential informant ("CI") to make several controlled purchases of illegal narcotics at 1739 West Fontain Street in Philadelphia. On three separate occasions, police watched the CI purchase illegal drugs from a black male stationed outside of the property.[4] Based on these observations, Philadelphia police obtained a warrant authorizing the search of 1739 West Fontain Street and the seizure therein of all controlled substances, scales, drug packaging, money, drug paraphernalia, any proof of residence, and weapons. Additionally, the search warrant authorized the police to search persons found inside the residence who may potentially conceal narcotics or other illegal contraband.

On September 23, 2004, at approximately 5:20 p.m., eight Philadelphia police officers arrived at 1739 West Fontain Street to execute the warrant. Driving an unmarked vehicle, the first officer to arrive on the scene saw Defendant standing in the doorway to the front entrance of the property. The officer exited his vehicle, identified himself as police, and ordered Defendant to freeze. Defendant, ignoring the order, ran into the residence and slammed the front door behind him.

---

1. Doc. # 93.

2. Doc. # 95. On or about April 26, 2006, Defendant, through counsel, mailed to the Court a *pro se* "Post Verdict Motion." In the motion, Defendant raises no fewer than fifteen sprawling issues. On May 4, 2006, three days after defense counsel filed a post-trial motion on Defendant's behalf, the Court ordered defense counsel to incorporate the arguments and points of law from Defendant's *pro se* motion into a supplemental post-trial motion. The Court also ordered the government to respond to Defendant's counseled motions, all of which have now been received and considered.

3. Doc. # 97.

4. The black male who sold the illegal drugs to the CI on all three occasions was later identified as Michael Grant. Grant cooperated with the government and testified against Defendant at trial. During two of the drug sales, police observed Grant enter 1739 West Fontain Street to obtain drugs, return to the CI on the street, and consummate the transaction. During the third controlled buy, police observed Grant retrieve drugs from a container positioned in an alley a short distance from 1739 West Fontain Street.

Several other officers went to the rear of the residence to prevent Defendant's escape from the back entrance, while other officers forcibly entered the residence through the front door. Once inside, the officers saw illegal drugs and drug paraphernalia in plain view. They then arrested Defendant as he tried to escape through the kitchen window. The officers searched Defendant and confiscated his belongings: cash, a key to the front door of the residence, a Pennsylvania driver's license bearing Defendant's picture and a false name, and a small quantity of marijuana. When asked to identify himself, Defendant falsely stated that his name was Robert Carino.

The police also searched the rest of the house and recovered, among other things, approximately 15.19 grams of crack cocaine, approximately thirty milligrams of heroin, a large amount of prescription pills, a loaded .38 caliber Colt pistol and a loaded .40 caliber semi-automatic Kel–Tec pistol. Significantly, police officers saw nothing in the residence to suggest that it functioned as a permanent residential dwelling. For example, the only items of furniture that police identified in the house were a chair, a console television, and a weight bench—all in the downstairs living room.

On June 14, 2005, a federal grand jury returned an indictment charging Defendant with one count each of conspiracy to possess with intent to distribute a controlled substance in violation of 21 U.S.C. § 846, possession with intent to distribute more than five grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), possession of a firearm in furtherance of a drug trafficking crime pursuant to 18 U.S.C. § 924(c)(1)(A), possession of a firearm by a convicted felon pursuant to 18 U.S.C. § 922(g)(1), and two counts of aiding and abetting a criminal offense pursuant to 18 U.S.C. § 2.[5] On March 9, 2006, Defendant filed a motion to suppress, arguing, among other things, that the items seized from Defendant's person were illegally obtained for lack of probable cause.[6] After a hearing on the motion to suppress and consideration of the government's response, the Court denied the motion in an opinion setting forth its findings of fact and conclusions of law.[7]

Prior to trial, the government filed a motion *in limine* seeking to admit evidence of Defendant's prior felony convictions pursuant to Federal Rule of Evidence 404(b). Specifically, the government sought to admit Defendant's 2001 conviction for possessing with intent to distribute crack cocaine at 1739 West Fontain Street. After reviewing Defendant's response to that motion, the Court ruled that the prior conviction was admissible. At trial, the Court gave the following limiting instruction, provided in relevant part, to govern the jury's use of the 2001 conviction:[8]

5. See Doc. # 1.

6. Defendant argued in his motion to suppress that the drugs and weapons seized from the residence also were illegally obtained, but those arguments are irrelevant to the Court's analysis of the issues presented by Defendant's instant motions.

7. Doc. # 72.

8. During a brief recess in the trial to discuss the limiting instruction, the Court acknowledged receipt of a supplemental proposed limiting instruction from defense counsel. N.T. 4/5/2006, at 156. The government objected to language in Defendant's proposed instruction that forbade the jury to consider the 2001 conviction "for any other purpose whatsoever" because the government—in addition to introducing the 2001 conviction to establish Defendant's knowledge and intent to engage in the criminal conspiracy to distribute and possess with intent to distribute illegal narcotics—sought to introduce the 2001 conviction to establish an element of the felon-in-possession-of-a-weapons charge. *Id.* at

Evidence that an act was done, or that an offense was committed by [Defendant] at some other time, is not, of course, any evidence or proof whatever that at another time ... [Defendant] performed a similar act or committed a similar offense, including the offense charged in this indictment.

The purpose for which the witness has been called, is to establish that certain things have happened. You will be able to draw your own inferences from what that is. But you cannot consider ... that because something may have been done before, that it was done this time.

This is to establish proof by the [g]overnment of their allegation that [Defendant] had the knowledge or intent to commit a crime. It's not proof just because it's a similar act.[9]

The government relied primarily on Michael Grant to make its case against Defendant. On direct examination, Grant testified that he started selling drugs for Defendant out of 1739 West Fontain Street in late July 2004. Grant also testified that the drugs that the police recovered from 1739 West Fontain Street belonged to Defendant. Further, Grant explained that during the course of their business relationship Defendant provided him bundles of crack cocaine, valued at approximately $135 each, to sell on the street.[10] According to their arrangement, Grant gave Defendant $100 for every bundle of crack cocaine that he sold and kept $35 as pay-

ment for selling the drugs. Finally, Grant identified the .40 caliber Kel–Tec pistol that police had recovered from 1739 West Fontain Street, testifying that he had observed the pistol in Defendant's possession on the day they were arrested.[11]

Cross-examination of Grant established that Grant had not been charged with two of the three drug sales to the CI, based on his plea agreement with the government. Additionally, defense counsel established on cross-examination that Grant was eligible for a reduced sentence in return for his testimony against Defendant. Defense counsel highlighted Grant's numerous felony convictions, pressed Grant to admit that at first he told investigators that Defendant had not engaged in any drug activity at 1739 West Fontain Street, and pushed Grant to concede that he did not identify Defendant as his drug supplier until plea negotiations began.[12]

## II. Discussion

### A. Motion for Judgment of Acquittal

Under Federal Rule of Criminal Procedure 29(c)(1), a defendant may move for a judgment of acquittal after a jury verdict of guilty. Further, Rule 29(c)(2) authorizes courts to set aside the verdict and enter an acquittal. In ruling on a motion for judgment of acquittal, the Court "must 'sustain the verdict if there is substantial evidence, viewed in the light most favorable to the government, to uphold the jury's decision.'"[13] The Third Circuit in-

---

156–59. Ultimately, defense counsel conceded that Defendant was not "in a position to object to" use of the 2001 conviction to establish an element of the weapons charge. *Id.* at 156. Significantly, the Court instructed the jury on the use of the 2001 conviction only after the government and defense counsel agreed to the language in *Defendant's* proposed limiting instruction.

**9.** *Id.* at 160.

**10.** Apparently, each bundle consisted of twenty-seven small bags of crack cocaine, which Grant sold for five dollars each.

**11.** *Id.* at 123–26.

**12.** *Id.* at 142–48.

**13.** *United States v. Flores,* 454 F.3d 149, 154 (3d Cir.2006) (quoting *United States v. Gambone,* 314 F.3d 163, 169–70 (3d Cir.2003)).

structs courts to be "ever vigilant in the context of [Rule] 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or, by substituting its judgment for that of the jury."[14] The verdict against Defendant must be sustained "if any rational juror could have found the elements of the crime beyond a reasonable doubt."[15]

■ Defendant argues that the evidence presented by the government was insufficient to support his conviction on any charge. First, Defendant contends that the government failed to prove beyond a reasonable doubt that he conspired to possess with intent to distribute illegal narcotics. Specifically, Defendant contends that, by buttressing the strength of its case on Grant's testimony, the government failed to establish that Defendant knew of the conspiracy charged.

■ To meet its burden of proof on a charge of conspiracy, the government must establish "a unity of purpose between the alleged conspirators, an intent to achieve a common goal, and an agreement to work together toward the goal."[16] Factors a court must consider "to determine a defendant's knowledge of the conspiracy are: (1) the length of affiliation between the defendant and the conspiracy; (2) whether there is an established method of payment; (3) the extent to which transactions are standardized; and (4) whether there is a demonstrated level of mutual trust."[17]

Here, Grant testified that he began selling drugs for Defendant in late July 2004. Therefore, Defendant was affiliated with the conspiracy to distribute illegal drugs out of 1739 West Fontain Street for a significant period of time—almost two months (the end of July 2004 to September 23, 2004, the date Defendant was arrested). Grant also testified that there was an established method of payment: Grant gave Defendant $100 on each bundle sold, keeping $35 for himself. Based on the consistent nature of the supplier-seller relationship between Grant and Defendant and the uniformity of the method of payment, the enterprise was standardized. Finally, the repetitious nature of the supplier-seller relationship between Grant and Defendant evidences a mutual trust between the two concerning their drug-trafficking arrangement. Thus, substantial evidence was presented at trial sufficient to support the jury's finding that Defendant knew of the conspiracy.

Additionally, Defendant argues that Grant's testimony is insufficient to base a conviction for conspiracy to possess with intent to distribute controlled substances because of the damaging information elicited from Grant during cross-examination. Defense counsel highlighted for the jury several facts to undermine Grant's credibility: (1) the government's offer not to charge him with two of the three observed drug sales in exchange for his testimony against Defendant; (2) his prior felonies and his failure to be forthright concerning the extent of his criminal history; and (3) his equivocation concerning Defendant's involvement in the sale of drugs at 1739 West Fontain Street. Defendant's argument invites the Court impermissibly to "usurp the role of the jury by weighing credibility and ... substitut[e] its judg-

**14.** *United States v. Brodie,* 403 F.3d 123, 133 (3d Cir.2005).

**15.** *United States v. Cothran,* 286 F.3d 173, 175 (3d Cir.2002).

**16.** *United States v. Gibbs,* 190 F.3d 188, 197 (3d Cir.1999), *cert. denied, Gibbs v. United States,* 528 U.S. 1131, 120 S.Ct. 969, 145 L.Ed.2d 840 (Jan. 18, 2000) (No. 99–7454).

**17.** *United States v. Perez,* 280 F.3d 318, 343 (3d Cir.2002).

ment for that of the jury." [18] The Court declines this invitation. Taken in the light most favorable to the government, Grant's testimony explaining the illegal drug enterprise undertaken by him and Defendant—despite the effectiveness of defense counsel's attack on his credibility—could have convinced a rational juror that Defendant conspired to possess with intent to distribute the illegal drugs.

■ Defendant next argues that the government's evidence failed to establish that he actually or constructively possessed the drugs or the firearm as charged in the indictment. It is not disputed that Defendant did not actually possess the contraband at issue here. Whether he constructively possessed the offending material, however, is disputed.

■ To establish that Defendant constructively possessed the contraband:

> The government must submit sufficient evidence to support an inference that the individual "knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons. Constructive possession necessarily requires both 'dominion and control' over an object and knowledge of that object's existence." [19]

The Third Circuit has held that "[d]ominion and control are not established ... 'by mere proximity to the [contraband], or mere presence on the property where it is located.' " [20] Rather, the Court of Appeals construes dominion and control as "the ability to reduce an object to actual possession." [21] For example, in *United States v.*

*Martorano*, the defendant obtained from an undercover informant actual possession of a key to a vehicle containing drugs placed there by federal law-enforcement officers. The defendant then gave the key to the van to an accomplice, instructing him to drive the van to a previously determined meeting area. However, before the accomplice could drive the van away, law-enforcement officers descended upon it, took the driver into custody, seized the drugs therein, and later apprehended the defendant. The defendant, charged with possession with intent to distribute the drugs in the van, argued that he did not constructively possess the drugs. On appeal, the Third Circuit rejected that argument, holding that the defendant "acquired constructive possession of the [drugs] when he acquired actual possession of the keys to the van." [22]

Here, Defendant possessed a key that gave him access to 1739 West Fontain Street, where the police recovered a wide assortment of illegal drugs and two loaded pistols. Accordingly, Defendant had the ability to reduce the drugs and firearms to his actual possession. Thus, under the reasoning of *Martorano*, Defendant constructively possessed the drugs and firearms in 1739 West Fontain Street.

It should also be noted that under the law of this Circuit, "the kind of evidence that can establish dominion and control includes ... evidence that defendant lied to police about his identity." [23] Here, Defendant lied to police by telling them that his name was Robert Carino, evidence which supports the Court's conclusion that

---

**18.** *Cothran,* 286 F.3d at 175.

**19.** *United States v. Jenkins,* 90 F.3d 814, 817–18 (3d Cir.1996) (quoting *United States v. Iafelice,* 978 F.2d 92, 96 (3d Cir.1992)).

**20.** *Id.* at 818.

**21.** *United States v. Martorano,* 709 F.2d 863, 869 (3d Cir.1983).

**22.** *Id.*

**23.** *Id.*

the jury's finding of possession was appropriate.

### B. *Motion for New Trial*

Federal Rule of Criminal Procedure 33 permits a court, upon motion of a defendant, to grant a new trial if mandated by the interests of justice. Here, Defendant first contends that a new trial is warranted because the Court erred in admitting the 2001 conviction for distributing drugs from 1739 West Fontain Street. Federal Rule of Evidence 404(b) provides that

> [e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.[24]

The Third Circuit has recognized "that Rule 404(b) is a rule of inclusion rather than exclusion."[25] As such, courts in this circuit are instructed to admit "evidence of other criminal conduct if such evidence is 'relevant for any other purpose than to show a mere propensity or disposition on the part of the defendant to commit the crime.' "[26] In ruling on whether to admit evidence under Rule 404(b), courts must apply the following test: "(1) the evidence must have a proper purpose; (2) it must be relevant; (3) its probative value must outweigh its potential for unfair prejudice; and (4) the court must charge the jury to consider the evidence only for the limited purpose for which it is admitted."[27]

▇ Here, Defendant concedes that the 2001 conviction served a proper purpose, that it was relevant, and that the Court instructed the jury concerning the limited purpose for which to use the 404(b) evidence. However, Defendant argues that the Court improperly admitted the 2001 conviction on the basis that the prior conviction's potential for unfair prejudice outweighed its probative value. Admittedly, because the 2001 conviction arises out of a drug sale at the crime scene in this case, it may have invited jurors to conclude unfairly that Defendant was guilty of the present charges because he had engaged in identical behavior in the past at that location. However, this is but one part of the Court's calculus. The Court must also weigh the probative value of the 2001 conviction against its potential to create unfair prejudice. Due to the almost complete resemblance of the 2001 conviction to the allegations of drug distribution in this case, the Court cannot fathom a scenario where evidence of another crime would have more probative value. Thus, in light of the general rule that " '[i]n weighing the probative value of evidence against the dangers ... in Rule 403 ... the balance should be struck in favor of admission,' "[28] the Court's admission of the 2001 conviction does not offend the interests of justice so as to warrant a new trial.

Defendant next argues that a new trial is warranted based on the Court's limiting instruction on the 404(b) evidence. Specifically, Defendant contends that the last two sentences of the instruction impermissibly state to the jury that the government has established the requisite knowledge

---

**24.** Fed.R.Evid. 404(b).

**25.** *United States v. Givan,* 320 F.3d 452, 460 (3d Cir.2003).

**26.** *Id.* (quoting *United States v. Long,* 574 F.2d 761, 765 (3d Cir.1978)).

**27.** *Id.*

**28.** *United States v. Johnson,* 199 F.3d 123, 128 (3d Cir.1999) (quoting *United States v. Dennis,* 625 F.2d 782, 797 (8th Cir.1980)).

and intent elements of the crime charged. Defendant's argument lacks merit.

The last two sentences of the limiting instruction state: "This is to establish proof by the Government of their allegation that [Defendant] had the knowledge or intent to commit a crime. It's not proof just because it's a similar act." [29] Defendant's argument attempts to extract from the instruction the first eight words of the penultimate sentence to suggest that by merely introducing the 2001 conviction the government has established its case. However, instructions to the jury must be considered as a whole, not piecemeal.[30] Viewed in its totality, the phrase "[t]his is to establish" plainly does not mean "[t]his establishes." Therefore, the interests of justice do not mandate a new trial on Defendant's claim of error in the limiting instruction.

Finally, Defendant argues that a new trial is warranted because the Court improperly admitted evidence of the fraudulent driver's license and marijuana that police confiscated during their search incident to Defendant's arrest. Defendant pressed this same argument in his motion to suppress, which the Court carefully considered at that time. Therefore, the Court will not do so again now.

### III. Conclusion

For the foregoing reasons, the Court denies Defendant's motion for judgment of acquittal or a new trial.

An appropriate Order follows.

### ORDER

**AND NOW,** this 11th day of September 2006, upon consideration of Defendant's Motion for Judgment of Acquittal or New Trial Pursuant to Federal Rules of Criminal Procedure 29 and 33 [Doc.# 93, 95] and the government's response thereto [Doc. # 97], it is hereby Ordered that Defendant's motion is **DENIED.**

It is so **ORDERED.**

---

29. N.T. 4/5/06, at 160.

30. *See United States v. Coyle,* 63 F.3d 1239, 1245 (3d Cir.1995).