**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2613
_____

UNITED STATES OF AMERICA

v.

STEPHAN BYRD
                    Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court No. 1:15-cr-00409-001)
Honorable Robert B. Kugler
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 12, 2022

Before: GREENAWAY, JR., MATEY, and RENDELL, *Circuit Judges.*

(Filed August 25, 2022)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge*.

Stephan Byrd raises several challenges to his conviction for bank robbery. Finding no errors, we will affirm.

**I.**

Byrd's conviction stems from three bank robberies in July 2014. Witnesses reported that the robber fled two of the scenes in a silver Honda. Around the same time, Eric Bogan was shot in Vineland, New Jersey. Bogan identified Eric Bailey and Shawn Jones as the perpetrators. Then Chicana Brown came forward and reported Byrd provided the gun to shoot Bogan.[1] All of this led a state court judge to issue warrants against Jones and Byrd for the shooting.

Events continued to move quickly, and Jones voluntarily surrendered, confessing his involvement in the shooting, though denying that Byrd was involved. Byrd was arrested in his silver Honda by federal officers executing the state warrant. The next day, state law enforcement officers reviewed timecards showing Byrd was at work at the time of the shooting. Even so, the state continued to detain Byrd.

Shortly thereafter, law enforcement officers executed a federal search warrant for effects in Byrd's car and a state search warrant for property in Byrd's home. The searches produced items tying Byrd to the bank robberies, and Byrd was charged by federal complaint with two of them. The next day, two federal agents questioned Byrd, and he

---

[1] Brown also identified Byrd as a third participant in the Bogan shooting, a claim later disproven.

confessed to all three robberies. Two weeks later, Charles Sanders gave a statement explaining that Byrd was not present for the Bogan shooting.

After Byrd was indicted for the three bank robberies, he moved to suppress his confession and the items seized from his car and home, alleging state police colluded with federal agents to circumvent federal procedural protections. The District Court denied Byrd's motions. Byrd was convicted, and the District Court denied his motion for a new trial. This appeal followed.[2] We consider each of Byrd's arguments and, finding no error, will affirm the judgment of conviction.

## II.

### A.    Confession

Byrd argues that his state arrest or his continued detention following the discovery of his alibi lacked probable cause. Either, he argues, required his confession be suppressed.

Byrd's arrest, though, was made after a state court judge found probable cause and issued a warrant. Probable cause exists when the facts known to the state at the time of arrest would allow "a prudent man [to] believ[e] that [Byrd] had committed . . . an offense."

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 18 U.S.C. § 1291. We review legal conclusions supporting the denial of motions to suppress de novo. *United States v. Williams*, 413 F.3d 347, 351 (3d Cir. 2005). Similarly, we "conduct a de novo review of the district court's conclusions of law" related to a defendant's *Brady* claims. *United States v. Pelullo*, 399 F.3d 197, 202 (3d Cir. 2005) (internal quotation marks and citation omitted). For both inquiries, we review factual findings for clear error. *Id.*; *Williams*, 413 F.3d at 351. And we review requests for in camera review, compulsory process, and prosecutorial misconduct claims for an abuse of discretion. *See United States v. Johnson*, 199 F.3d 123, 125 (3d Cir. 1999); *United States v. Cruz-Jiminez*, 977 F.2d 95, 99 (3d Cir. 1992); *United States v. Lee*, 612 F.3d 170, 193 (3d Cir. 2010).

*Beck v. Ohio*, 379 U.S. 89, 91 (1964) (citing *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949); *Henry v. United States*, 361 U.S. 98, 102 (1959)). Like the District Court, we agree such facts existed here.[3] Brown came to the police unsolicited and testified to Byrd's involvement in the Bogan shooting. And her account included details, such as the description of the gun, enhancing her credibility. Facts enough to "warrant a prudent man in believing that [Byrd] had committed . . . an offense." *Beck*, 379 U.S. at 91.

True, there was some exculpatory evidence. For example, Jones had stated that Byrd was not involved. But inconsistencies in Jones's account made him less reliable. And what is more, exculpatory evidence does not defeat a finding of probable cause. *See Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 (3d Cir. 2000) (finding probable cause in the face of contradictory evidence); *see also Gerstein v. Pugh*, 420 U.S. 103, 111–12 (1975) (probable cause is a compromise between liberty and public safety). Nor did this probable cause evaporate after the police learned of Byrd's alibi. The timecards showing that Byrd was at work at the time of the shooting did not undercut the state's theory that Byrd had provided the gun to Bailey and Jones.

Byrd also argues his confession should be suppressed because he was not brought before a judge while detained by the state. But federal procedures are inapplicable to his detention in state custody and on a state charge. *See* Fed. R. Crim. P. 5(a)(1), 5(c), 9; *United*

---

[3] Nor, as Byrd contends, is the enforcement of state procedural requirements relevant to our probable cause determination. *See Virginia v. Moore*, 553 U.S. 164, 166, 176 (2008) (holding the Fourth Amendment does not prohibit arrests "based on probable cause but prohibited by state law"); *Cooper v. California*, 386 U.S. 58, 61 (1967) ("[A] search not expressly authorized by state law [may] be justified as a constitutionally reasonable one.").

*States v. Alvarez-Sanchez*, 511 U.S. 350, 352 (1994) (applying 18 U.S.C. § 3501's prompt presentment requirement only to federal charges).

While improper collaboration between state and federal officials might render a confession inadmissible, *see Alvarez-Sanchez*, 511 U.S. at 359, cooperation between law enforcement agencies is not intentional evasion of federal protections. Byrd has not shown that officials colluded to deny him rights. *See Byars v. United States*, 273 U.S. 28, 32 (1927) (judiciary watches "with an eye to detect and a hand to prevent violations of the Constitution" through improper collusion). Nor has he shown that his detention on the state charge was effectively a federal detention. *See Gambino v. United States*, 275 U.S. 310, 316 (1927). Nor that the state charge was a mere ploy supporting the federal charge or that it had the purpose of coercing a confession. *See United States v. Mills*, 964 F.2d 1186, 1188 (D.C. Cir. 1992) (en banc). So the District Court did not err in admitting the confession.

## B.    Physical Evidence

Next, Byrd argues that his motion to suppress evidence seized in his home and car was improperly denied. But the Government discussed this evidence only after Byrd mentioned it himself at trial. Byrd raised the evidence during a cross-examination, and again during closing argument. Any error was therefore harmless. *See United States v. Kolodesh*, 787 F.3d 224, 231 (3d Cir. 2015) (discussing invited error doctrine).[4]

---

[4] In any event, we detect no error in admitting this evidence. The items were seized under search warrants issued after Byrd's state arrest. He had been found in his car, which matched the description of the vehicle used in the bank robbery, both circumstances supporting the warrants. Byrd's argument that the police falsified the arrest report to include information about his car is unsupported and unpersuasive.

## C.    *Brady* and In Camera Review

Byrd argues that Sanders's statement should have been shared as *Brady* material. We disagree. First, while Sanders's statement shows that Byrd was not present for the shooting, it does not establish that Byrd did not supply the gun, and so it cannot be used to cast doubt on Byrd's arrest or detention. Second, the statement was not "material" to Byrd's "guilt or [] punishment" for the charged crimes—the bank robberies. *See United States v. Pelullo*, 399 F.3d at 209.

Nor did the District Court abuse its discretion in declining in camera review, a standard requiring a "plausible showing" that material evidence will be uncovered. *Pennsylvania v. Ritchie*, 480 U.S. 39, 58 n.15 (1987) (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982)). There was no such showing here. An email indicating federal interest in Byrd before the shooting neither shows he did not commit the robberies, nor sheds any light on his state arrest. An email referencing a meeting between state and local law enforcement does not "raise[] questions about the propriety of . . . redacted information." Reply Br. 18. While Byrd may speculate that these documents contain evidence of collusion, he has never explained why.[5] So Byrd has not shown that the District Court's decision was an abuse of discretion.

---

[5] This deficiency also defeats Byrd's suggestions about prosecutorial misconduct. While he states that federal prosecutors knew of his illegal detention, failed to disclose *Brady* evidence, and revealed Jencks material shortly before trial, none of these assertions are supported.

5

**D.    Compulsory Process**

Finally, Byrd contends he was denied compulsory process because the District Court declined to subpoena all 33 of his requested witnesses. But Byrd does not establish the relevance of any testimony they would have given. Some would have apparently testified about law enforcement collusion, but that was only relevant to Byrd's request for suppression, which had been denied. *See Holmes v. South Carolina*, 547 U.S. 319, 326–27 (2006) (no constitutional right to present irrelevant testimony). Others would have testified about the Bogan shooting, so Byrd could argue he was misidentified. But Byrd was not on trial for the shooting, and his hope that the evidence would have established misidentification for the robberies is "at best speculative." *United States v. Quinn*, 728 F.3d 243, 262 (3d Cir. 2013) (en banc) (quoting *United States v. Ammar*, 714 F.2d 238, 251 n.8 (3d Cir. 1983)). And no evidence in the record supported calling law enforcement officers to allege evidence tampering. *See Gov't of Virgin Islands v. Mills, 956 F.2d 443, 446 (3d Cir. 1992)*; *see also Holmes*, 547 U.S. at 326–27.

**III.**

Finding no errors in the District Court's decisions, we will affirm its judgment of conviction.