**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2468
No. 09-2544
No. 09-2586

_____

UNITED STATES OF AMERICA

v.

FRANCISCO HERRERA-GENAO, Appellant in No. 09-2468
WILFEDO BERRIOS, Appellant in No. 09-2544
EFRAIN LYNN, Appellant in No. 09-2586

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Crim. No. 07-cr-00454)
District Judge:  Honorable Anne E. Thompson

_____

Submitted Under Third Circuit LAR 34.1(a)
February 18, 2011

Before:  SLOVITER and HARDIMAN, *Circuit Judges*,
and JONES, II,* *District Judge*.

(Filed: March 24, 2011 )
_____

OPINION OF THE COURT
_____

_____

*The Honorable C. Darnell Jones, II, District Judge for the United States District
Court for the Eastern District of Pennsylvania, sitting by designation.

JONES, II, *District Judge*.

Francisco Herrera-Genao ("Herrera-Genao"), Wilfredo Berrios ("Berrios"), and Efrain Lynn ("Lynn") appeal their judgments of conviction and sentences following a jury trial. We will affirm.

## I.

We write for the benefit of the parties and recount only the essential facts, which we review in the light most favorable to the verdict. *United States v. Jimenez*, 513 F.3d 62, 69 (3d Cir. 2008).

This case involves a series of violent and tragic events which traumatized everyone involved. From February to March 2007, Hererra-Genao, Berrios, and Lynn (collectively, "Defendants") committed a series of four violent armed bank robberies in New Jersey. Defendants identified what they considered to be easy-to-rob bank branches and stole Hondas for use as getaway cars. Defendants met, donned ski masks, and entered the branches carrying either handguns or large automatic weapons. In each case, once inside, one conspirator fired his weapon to frighten the employees, jumped over the counter, pointed his gun at the head of an employee, and demanded that money be put in a laundry bag. Once flush with cash, Defendants fled in one of the Hondas, abandoned the car, and returned home in a "switch" vehicle.[1]

---

[1] The plan of action varied slightly from robbery to robbery, but followed this basic scheme.

On April 5, 2007, after conducting surveillance, FBI agents intercepted Herrera-Genao and Berrios as they arrived in a stolen Honda at a bank branch to commit a fifth armed robbery. At the time, an additional co-conspirator, Michael Cruz ("Cruz"), was waiting in a switch car as a lookout and driver. Herrera-Genao and Berrios had multiple loaded weapons, a ski mask, and a laundry bag. Berrios was arrested in the parking lot; Herrera-Genao fled into the woods and was arrested the following morning. Lynn and Cruz were also both arrested. While arresting Cruz, a veteran FBI agent was shot and killed by an accidental discharge from the weapon of another agent.[2]

On October 13, 2008, the United States of America filed a Second Superseding Indictment against Defendants. Count One charged Herrera-Genao, Berrios and Lynn with conspiring with one another and others to commit Hobbs Act robbery, from February 8, 2007, through April 5, 2007, in violation of 18 U.S.C. § 1951; Count Two charged Herrera-Genao and Berrios with armed robbery on February 8, 2007, in violation of 18 U.S.C. § 2113(a) and (d); Count Three charged Herrera-Genao and Berrios with possession of a firearm in furtherance of a crime of violence on February 8, 2007, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and 18 U.S.C. § 2; Counts Four, Six and Eight charged Herrera-Genao, Berrios and Lynn with armed robbery on February 16, 2007, March 2, 2007, and March 16, 2007, respectively, in violation of 18 U.S.C. § 2113(a) and (d); Counts Five, Seven and Nine charged Herrera-Genao, Berrios

---

[2] None of the conspirators were charged with the FBI Agent's death.

and Lynn with possession of a firearm in furtherance of a crime of violence, on February 16, 2007, March 2, 2007, and March 16, 2007, respectively, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and 18 U.S.C. § 2; Count Ten charged Herrera-Genao and Berrios with attempting to commit armed robbery on April 5, 2007, in violation of 18 U.S.C. § 2113(a) and (d); and Count Eleven charged Herrera-Genao and Berrios with possession of a firearm in furtherance of a crime of violence on April 5, 2007, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and 18 U.S.C. § 2. Pursuant to a plea agreement, Cruz became a cooperating witness for the Government.

Defendants each filed several pre-trial motions. Herrera-Genao's motion either to sever his trial or to redact Lynn's post-arrest statement was adjudicated by U.S. District Judge Garrett E. Brown. The case was then transferred to the U.S. Senior District Judge Anne E. Thompson, who adjudicated Herrera-Genao's pre-trial motion to suppress his post-arrest statement and the Government's motion to admit evidence of prior minor offenses committed together by Cruz and Lynn to show the origins and nature of their relationship.

Beginning December 2, 2008, Defendants were tried together before a jury. Cruz testified against the Defendants. On December 10, 2008, the jury found Herrera-Genao guilty of Counts One through Eleven; Berrios guilty of Counts One and Four through Eleven; and Lynn guilty of Counts One and Six through Nine.[3]

---

[3] Berrios was acquitted of Counts Two and Three. Lynn was acquitted of Counts Four and

4

On May 11, 2009, the District Court sentenced Herrera-Genao to a term of 1,407 months imprisonment, including 87 months on each of the conspiracy and armed robbery counts (Counts One, Two, Four, Six, Eight and Ten), to run concurrently; 120 months on the first of the § 924(c) counts (Count Three), to run consecutively; and 300 months on each of the remaining § 924(c) counts (Counts Five, Nine and Eleven), to run consecutively. On May 22, 2009, Berrios was sentenced to the statutory mandatory minimum term of 1,020 months imprisonment, including 120 months on the first of the § 924(c) counts (Count Five) and 300 months for each of the remaining § 924(c) counts (Counts Seven, Nine and Eleven), to run consecutively. The Court imposed no term of incarceration for the armed robberies (Counts One, Four, Six, Eight and Ten). On May 28, 2009, Lynn was sentenced to a term of 481 months imprisonment, including 97 months on each of the conspiracy and armed robbery counts (Counts One, Six and Eight), to run concurrently; 84 months on the first of the § 924(c) counts, to run consecutively; and 300 months on the remaining § 924(c) count (Count Nine), to run consecutively.

Defendants' timely appeals followed.[4]

## II.

On appeal, Herrera-Genao claims: (1) the District Court erred in denying his motion to suppress his statement to authorities; (2) the District Court erred in denying his

---

Five.

[4] We have jurisdiction over these appeals pursuant to 28 U.S.C. § 1291 and 18 U.S.C. §

5

motion to sever; (3) the District Court erred by not granting a mistrial; and (4) the cumulative effect of errors below rendered the proceedings unfair. Lynn claims: (1) the cumulative effort of errors below rendered the proceedings unfair, and (2) the District Court erred in not reversing his convictions as to Counts Six and Seven based on lack of evidence.[5]

We review the District Court's factual findings in a suppression hearing for clear error, and exercise plenary review of the District Court's application of the law to those facts. *United States v. Riddick*, 156 F.3d 505, 509 (3d Cir. 1998). We review the admission of evidence for abuse of discretion. *Complaint of Consolidation Coal Co.*, 123 F.3d 126, 131 (3d Cir. 1997). We review the District Court's decision not to sever for plain error. *United States v. Quintero*, 38 F.3d 1317, 1339 (3d Cir. 1994). We review the District Court's decision not to grant a mistrial based on a witness's allegedly prejudicial comments for abuse of discretion. *United States v. Lore*, 430 F.3d 190, 207 (3d Cir. 2005) (citing *United States v. Xavier*, 2 F.3d 1281, 1285 (3d Cir. 1993)). We exercise plenary review of the District Court's denial of a motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29. *United States v. Carbo*, 572 F.3d 112, 113 (3d Cir. 2009) (citing *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006)). We review claims of cumulative error not raised below for plain error. *United States v. Olano*, 507 U.S. 725, 732 (1993) (citing *United States v. Young*, 470 U.S. 1, 15 (1985)).

---

3742(a)(1).

**A.**

Herrera-Genao claims that the circumstances under which his post-arrest

statements were made were coercive in nature, and, as a result, the District Court

committed clear error by not suppressing them. At the suppression hearing, Herrera-

Genao argued that when his statements were taken by two FBI agents, he was feeling

chilled and nauseous, was shirtless, and was wearing hardened jeans (due to a

combination of having ingested cocaine and hidden in a cold pond in a fruitless attempt to

evade capture). Herrera-Genao also contended that, during the multi-hour interrogation,

he was handcuffed and given neither food nor coffee. However, Herrera-Genao did

acknowledge that the interrogation room was heated, he was given water and a blanket,

and he was allowed to use the bathroom. Herrera-Genao maintained that he had not read

either his waiver of rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), or his

statements, but simply signed them where the Agents indicated.

FBI Special Agent Mark Corrice testified at the suppression hearing for the United

States. Agent Corrice testified that the interrogation lasted four to five hours, and, in

statements parallel to those of Herrera-Genao, that Herrera-Genao was restrained, given a

blanket to warm up, and given water to drink.[6] Agent Corrice testified that, promptly

after capture, Herrera-Genao was brought to interrogation, verbally advised as to his

---

[5] For purposes of this appeal, each Defendant joins in the arguments made by the others.
[6] Agent Corrice could not recall certain specific details, such as the color of Herrera-Genao's pants and whether Herrera-Genao wore a belt, shoes, or glasses.

7

*Miranda* rights, and then given a Statement of Rights, which he reviewed and signed. Moreover, Agent Corrice testified that, at the questioning of agents, Herrera-Genao specifically told them that he understood his rights. He also testified that Herrera-Genao did not appear to be affected by drugs or injured. The Government introduced a picture of Herrera-Genao taken during the interrogation to support Corrice's testimony. Tr. Ex. 8027.

Based on the testimony summarized here, Herrera-Genao argues that the totality of circumstances was coercive, and his confession therefore failed to meet the standards set by the U.S. Supreme Court. We do not agree. Pursuant to *Miranda*, procedural safeguards must be employed to protect a suspect's privilege against self-incrimination. First, those in authority are required to warn a suspect "prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda*, 384 U.S. at 479. Second, an opportunity to exercise these rights must be afforded to a suspect throughout the interrogation unless he knowingly and intelligently waives these rights and agrees to answer questions or make a statement. *Id*. If these conditions are met absent a predicate of coercive police conduct, a confession will not be disturbed based on alleged involuntariness. *Colorado v. Connelly*, 479 U.S. 157, 167

(1986).

Therefore, "in determining whether a confession was voluntary, we must satisfy ourselves that the confession was the product of an essentially free and unconstrained choice by its maker, that it was the product of a rational intellect and a free will, and that the appellant's will was not overborne" by police interrogators. *United States v. Swint*, 15 F.3d 286, 289 (3d Cir. 1994) (citation omitted). In other words, the central question is whether the authorities coerced the defendant's confession; if not, then the confession is voluntary. *Id.* Under our deferential review for clear error, we will not second-guess a district court's credibility determinations. Indeed, when the district court's determinations about the credibility of witnesses are "based on testimony that is coherent and plausible, not internally inconsistent and not contradicted by external evidence, there can almost never be a finding of clear error." *United States v. Igbonwa*, 120 F.3d 437, 441 (3d Cir. 1997) (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985)); s*ee also, e.g., United States v. Bethancourt*, 65 F.3d 1074, 1078 (3d Cir. 1995) (declining to review court's credibility determination favoring a law enforcement official in the context of dueling testimony about an interrogation and confession).

Here, Agent Corrice's testimony could certainly be found by the District Court to credibly establish that: (1) Herrera-Genao was properly advised of his *Miranda* rights and executed an appropriate waiver, and (2) the length and conditions of Herrera-Genao's

questioning did not vitiate that consent.[7] We conclude that there is no basis to disturb the District Court's credibility determination. That credibility determination led the District Court to conclude that there was no predicate coercive police activity, and thus, Herrera-Genao's *Miranda* advice and waiver were voluntary, and his subsequent statements were admissible. We find no clear error in those conclusions.

**B.**

Herrera-Genao claims that the District Court erred by not severing his trial from that of co-defendant Lynn. According to Herrera-Genao, the District Court's failure to sever resulted in the prejudicial admission of Lynn's confession, and therefore violated Herrera-Genao's right to confrontation pursuant to *Bruton v. United States*, 391 U.S. 123 (1968). We are not persuaded.

An indictment "may charge two or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." FED. R. CRIM. P. 8(b). "There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Such joint trials promote efficiency in the courts and serve the interests of justice by preventing "the scandal and inequity of inconsistent

---

[7] Herrera-Genao's argument regarding the extent of the District Court's findings of fact is unavailing because a finding of voluntariness is implicit in admission of Mirandized statements. *See, e.g.*, *United States v. Cruz*, 910 F.2d 1072, 1079-80 (3d Cir. 1990). In addition, Herrera-Genao conflates the court's required inquiry of police coercion at the suppression hearing stage with other involuntariness arguments potentially available to Herrera-Genao at trial.

10

verdicts." *Id*. at 537 (quoting *Richardson v. Marsh*, 481 U.S. 200, 209 (1987)).  Joint trials are especially appropriate where, as here, the defendants are charged with participating in a single conspiracy.  *United States v. Voigt*, 89 F.3d 1050, 1094 (3d Cir. 1996).  This is because single trials aid the finder of fact in determining the "full extent of the conspiracy," *United States v. Provenzano*, 688 F.2d 194, 199 (3d Cir. 1982), and prevent "the tactical disadvantage to the government from disclosure of its case."  *United States v. Jackson*, 649 F.2d 967, 973 (3d Cir. 1981).

However, one defendant may move for severance when he believes it is necessary to avoid the "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *Zafiro*, 506 U.S. at 537.  The "denial of severance is committed to the sound discretion of the trial judge."  *United States v. Eufrasio*, 935 F.2d 553, 568 (3d Cir. 1991) (citing *United States v. Reicherter*, 647 F.2d 397, 400 (3d Cir. 1981)).  To warrant reversal, Herrera-Genao must demonstrate that the joint trial resulted in "clear and substantial prejudice" resulting in a manifestly unfair trial.  *United States v. Reyeros*, 537 F.3d 270, 286-87 (3d Cir. 2008).

As an initial matter, Herrera-Genao likely waived this claim below by, after moving for either severance or redaction of Lynn's confession, assenting to a negotiated redaction of the statements at issue in satisfaction of the *Bruton* precepts.  Nonetheless, even if Herrera-Genao did not fully waive this argument, it must fail.  There is no doubt

11

that Herrera-Genao and Lynn were involved in the "same series of acts or transactions" – namely, a series of violent bank robberies. As such, they were properly joined and Herrera-Genao had to overcome a "heavy burden" to justify severance. *See United States v. Console*, 13 F.3d 641, 655 (1993). The District Court weighed any potential prejudice of the admission of Lynn's statements against the nature of conspiracy allegations and principles of judicial economy, and it recognized that one acceptable means of mitigating prejudice under *Bruton* was to redact a confession to be admitted as to one defendant so as to not inculpate another defendant. *Gray v. Maryland*, 523 U.S. 185, 192 (1998).

The District Court therefore elected to: (1) try the Defendants together and (2) eliminate any prejudice to Herrera-Genao by redacting Lynn's confession. It accomplished the latter via extensive alterations arrived at in consultation with the parties. Those redactions reflected the guidelines for the use of "neutral terms" developed by *Gray* and its progeny in this Circuit. *See Vazquez v. Wilson*, 550 F.3d 270, 278-80 (3d Cir. 2008); *United States v. McKee*, 506 F.3d 225, 249-50 (3d Cir. 2007). Moreover, the District Court properly instructed the jury that "under the law [Lynn's] statement [could] only be used in considering the guilt or lack of guilt of the particular defendant who gave the statement, and nobody else. And it's important, absolutely essential, that you apply it in that way." JA334. We find this course of action comported with governing law, and we conclude Herrera-Genao has not demonstrated that it resulted in clear and substantial prejudice resulting in a manifestly unfair trial. *Console*, 13 F.3d at 655 (citing *United*

12

*States v. Sandini*, 888 F.2d 300, 307 (3d Cir. 1989)).  As such, we find no error. [8]

## C.

Herrera-Genao claims that the District Court abused its discretion by not granting a mistrial after Cruz referred to the death of an FBI agent during one sentence of his trial testimony.[9]  We consider: (1) whether Cruz's testimony was pronounced and persistent, creating a likelihood it would mislead and prejudice the jury; (2) the strength of other evidence; and (3) the curative action taken by the District Court.  *United States v. Riley*, 621 F.3d 312, 336 (3d Cir. 2010).  Here, Cruz's reference was only a single remark over the course of a long trial; it was neither pronounced nor persistent, *see, e.g.*, *Lore*, 430 F.3d at 207, and it did not create a significant likelihood of confusion or prejudice.  Moreover, Cruz neither stated the cause of the FBI Agent's death, nor associated the Agent's death with any actions of the Defendants (indeed, Cruz's reference was part of a general statement about *his own* plea agreement).  Furthermore, the District Court's

---

[8] Herrera-Genao briefly argues that the admission of the testimony of co-conspirator Michael Cruz regarding his prior criminal relationship with co-defendant Lynn was also so prejudicial as to require reversal.  We have reviewed the record and do not agree that Cruz's testimony resulted in such a degree of prejudicial "guilt by association" as to characterize its admission an abuse of discretion.  The threat of spillover here was relatively low, *Lore*, 430 F.3d 190, 205 (3d Cir. 2005), and any such concern was adequately addressed by the District Court's jury instruction, *Reyeros*, 537 F.3d at 286.  Stated differently, the evidence was not of such a serious nature that it could not be sufficiently understood and compartmentalized by the jury during its consideration of the alleged conspiracy.

[9] Although Berrios joins in his co-defendants' appeals, this issue is also raised by Lynn, but not Berrios, likely because the reference at issue was elicited by Berrios's own counsel during cross-examination regarding a plea document that Berrios's counsel knew specifically mentioned the issue of the FBI Agent's death.

curative instruction – which, *inter alia*, specifically informed the jury that the FBI Agent's death was "not due to the actions of *Mr. Cruz or any of the defendants*" – sufficiently ameliorated any potential prejudice that could have arisen from Cruz's remark. JA573 (emphasis added). We find there was no abuse of discretion.

**D.**

Lynn claims that the District Court erred by not granting his motion for acquittal on Counts Six and Seven. Lynn essentially argues that because the evidence against him on Counts Four and Five had the same source as the evidence against him on Counts Six and Seven – namely, an FBI Agent interrogator – the jury could not reasonably have convicted him on two of those Counts (pertaining to the March 2, 2007 robbery) and acquitted him on the other two Counts (pertaining to the February 16, 2007 robbery). An inconsistent verdict, however, is not a suitable basis for an acquittal. This is so because "an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake." *United States v. Powell*, 469 U.S. 57, 66 (1984). Without a generally inappropriate inquiry, it cannot be clear whether it was the Government or the defendant who truly benefited from an inconsistent verdict. In other words, because of the secrecy of jury deliberations, in situations where there are inconsistent verdicts that may indicate a jury has not followed its instructions, "it is unclear whose ox has been gored." *Id*. at 65. As such, we will not reverse a conviction based on mere speculation

14

about the jury's rational deliberation process. *See, e.g.*, *United States v. Vastola*, 989 F.2d 1318, 1331 (3d Cir. 1993).

Instead, we conduct a sufficiency of the evidence review, and in doing so we are required to accept all of the evidence and view it in the light most favorable to the prosecution (without regard to the acquittals on Counts Four and Five) "to determine whether any rational trier of fact would have found proof of guilt beyond a reasonable doubt based on the available evidence." *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) (quoting *United States v. Wolfe*, 245 F.3d 257, 262 (3d Cir.2001)). A finding of insufficiency "should be confined to cases where the prosecution's failure is clear." *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984). Having reviewed the evidence here, we conclude it was more than sufficient to support a verdict beyond a reasonable doubt against Lynn by a rational trier of fact.

### E.

Herrera-Genao and Lynn also claim the cumulative effect of errors at trial rendered those proceedings unfair. Herrera-Genao complains only of the cumulative effect of the preceding claims; because we have found no error regarding those claims, Herrera-Genao's claim of cumulative error also fails.

Lynn complains of several additional evidentiary errors and their cumulative effect. The decision to admit evidence is generally within the district court's "considerable discretion." *United States v. Johnson*, 199 F.3d 123, 128 (3d Cir. 1999).

15

An abuse of discretion only occurs where the district court's decision is "arbitrary, fanciful, or clearly unreasonable" – in short, where "no reasonable person would adopt the district court's view." *United States v. Starnes*, 583 F.3d 196, 214 (3d Cir. 2009) (citing *Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 519 (3d Cir. 2003)); *see also United States v. Kemp*, 500 F.3d 257, 295 (3d Cir. 2007).

First, Lynn contends that admission pursuant to Federal Rule of Evidence 404(b) ("F.R.E. 404(b)") of evidence of prior crimes allegedly perpetrated by Lynn and Cruz – specifically, testimony of Cruz that he and Lynn together stole navigation systems, stereos, speaker boxes, motorcycles, and other "stuff" – was unduly prejudicial. This argument is without merit. F.R.E. 404(b), although viewed as a rule of inclusion rather than exclusion, provides for the exclusion of relevant evidence in certain situations. *Huddleston*, 485 U.S. at 688-89; *United States v. Scarfo*, 850 F.2d 1015, 1019 (3d Cir. 1988). Specifically, F.R.E. 404(b) precludes the admission of evidence of other crimes, wrongs or acts to prove a person's character; however, such evidence may be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." F.R.E. 404(b). More specifically, evidence of other wrongful acts is admissible as long as it is not introduced solely to prove criminal propensity. *United States v. Sriyuth*, 98 F.3d 739, 745 (3d Cir. 1996).

Accordingly, the primary inquiry is whether the evidence is probative of a material issue other than character; if it is, we favor admission. *Huddleston*, 485 U.S. at 687;

16

*Johnson*, 199 F.3d at 128. To ensure such is the case, evidence subject to F.R.E. 404(b) must satisfy four criteria: (1) a proper evidentiary purpose; (2) relevance under Federal Rule of Evidence 402; (3) probative value exceeding any prejudice pursuant to Federal Rule of Evidence 403; and (4) a limiting instruction concerning the purpose for which the evidence must be used. *Huddleston*, 485 U.S. 691-92; *United States v. Mastrangelo,* 172 F.3d 288, 294 (3d Cir. 1999).

We find that the evidence of Lynn's prior acts undertaken in conjunction with Cruz was adduced for the legitimate purposes of: (1) showing the relationship between Lynn and Cruz; (2) demonstrating why Lynn would share information with Cruz regarding the bank robberies; (3) demonstrating why Lynn would invite Cruz to become part of the bank robbery conspiracy; and (4) lending credibility to Cruz's description of the conspiracy and his participation therein.[10] After reviewing the evidence in context, we reject the contention that the evidence of Lynn and Cruz's relatively minor crimes improperly demonstrated a propensity to commit the serious, violent bank robberies at issue. Rather, we find that the evidence had a proper purpose, was probative, and not unduly prejudicial. We also find that the District Court gave an appropriate limiting instruction.[11] Accordingly, the District Court did not abuse its discretion in admitting

---

[10] We also note that Lynn did not stipulate to aspects of his relationship with Cruz and deliberately put the Government to its proofs.

[11] The District Court instructed the jury that:
"The Government has offered this evidence to prove a relationship,

17

Cruz's testimony on this subject. *See, e.g.*, *United States v. Butch*, 256 F.3d 171, 175-77 (3d Cir. 2001) (affirming admission of evidence probative as to the formation and development of the relationship of co-conspirators, subject to proper analysis and limiting instruction).

Second, Lynn contends that certain other evidence should have been excluded as prejudicial under Federal Rule of Evidence 403 ("F.R.E. 403") – specifically, (1) a DVD of the violent bank robbery movie "44 Minutes" found in Lynn's car and (2) a paragraph of Lynn's statement in which Lynn admitted that the co-conspirators planned to emulate the robbers' behavior in that movie if intercepted by law enforcement officers (*i.e.*, to engage in a "shoot out"). At trial, over Lynn's objection as to prejudice, evidence of the DVD's discovery and general content was set forth by an investigating FBI Agent; however, the DVD was not played for the jury. Exclusion under F.R.E. 403 requires the danger of unfair prejudice to "*substantially* outweigh[] the probative value." *United States v. Kemp*, 500 F.3d 257, 297 (3d Cir. 2007) (emphasis added); *United States v. Mathis*, 264 F.3d 321, 326-27 (3d Cir. 2001) (noting that we construe the district court's discretion especially broadly in the context of F.R.E. 403); *United States v. Jemal*, 26

---

a connection, between [] Lynn and [] Cruz. That's all…So should you choose to believe the evidence presented about these activities, you may consider this only – evidence only for a limited purpose of proving a relationship, an association between these two people. You may not consider it as evidence that any one of the defendants is a bad person or that person has a propensity to commit crimes or to do bad things."

JA1010.

F.3d 1267, 1272 (3d Cir. 1994) ("If judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal.") (internal quotation marks omitted)).

Here, while the challenged evidence may have cast Lynn in an unsavory light, it was probative to the Government's case. Indeed, one of the elements of multiple counts of the Second Superseding Indictment was that Lynn and his co-conspirators committed bank robbery "by force and violence, or by intimidation." *See* 18 U.S.C. § 2113(a). The DVD and its subject matter were probative of that intent. The evidence also served other legitimate purposes, including corroborating Cruz's testimony. Even if we were to find some prejudice, it does not clearly outweigh the evidence's probative value. We therefore conclude that the District Court's exercise of discretion in admitting this evidence was reasonable.

Because we find no evidentiary error, Lynn's cumulative error claim also fails.

### III.

Defendants also claim their sentences are unreasonable and/or unconstitutional. A party challenging his sentence bears the burden of showing that his sentence is unreasonable. *United States v. King*, 454 F.3d 187, 194 (3d Cir. 2006). We apply an abuse of discretion standard, *Rita v. United States*, 551 U.S. 338, 351 (2007), but we accord great deference to the district court's choice of final sentence, *United States v.*

19

*Lessner*, 498 F.3d 185, 204 (3d Cir. 2007).[12] *See also Gall v. United States*, 552 U.S. 38, 51 (2007) ("The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court."); *United States v. Tomko*, 562 F.3d 558, 565 (3d Cir. 2009) (en banc) ("[D]istrict courts have an institutional advantage over appellate courts in making [sentencing] determinations."). A sentence will not be reversed as substantively unreasonable "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the District Court provided." *Tomko*, 562 F.3d at 568.

**A.**

By our count, Herrera-Genao claims his sentence was an abuse of discretion for seven reasons.[13]

First, Herrera-Genao claims the District Court erred in allowing a family member to translate the statements at sentencing of several other family members. Herrera-Genao waived this objection by contemporaneously consenting to the course of action. *See* 28 U.S.C. § 1827(f)(1). It appears to us that the translations were understood by the parties and taken into account by the sentencing judge. *See* Herrera-Genao App'x at 382-83.

---

[12] However, complaints regarding sentencing which were not raised below are reviewed for plain error. *Olano*, 507 U.S. at 732; *United States v. Miller*, 594 F.3d 172, 183 n.6 (3d Cir. 2010).

[13] Although Herrera-Genao's initial advisory Guidelines range was 87 to 108 months, it became 1,407 to 1,428 months due to the mandatory consecutive sentences of ten years for Count Three and 25 years for Counts Five, Seven, Nine, and Eleven.

The District Court did not violate Herrera-Genao's due process rights.

Second, Herrera-Genao claims that in calculating his advisory Guidelines range, the Court should have grouped separate charges because they involved substantially the same harm. However, the District Court did not abuse its discretion when it relied on the fact that the advisory Guidelines exclude offenses under U.S.S.G. § 2B3.1 – including, *inter alia*, robbery with a firearm – from such grouping. *See* U.S.S.G. § 3D1.2.

Third, Herrera-Genao claims that the District Court should have granted his motion for a downward departure for acceptance of responsibility in light of his post-arrest statements. However, before trial and during trial (despite the results of the suppression hearing), Herrera-Genao argued that his post-arrest statements were coerced, involuntary, or fabricated.[14] The District Court did not abuse its discretion by finding that such arguments were fundamentally at odds with the purported grounds for the downward departure and declining to accede to that request.

Fourth, Herrera-Genao claims that the District Court should have granted his motion for a downward departure based on diminished capacity. However, the District Court did not abuse its discretion, as Herrera-Genao's request could properly be denied pursuant to the advisory Guidelines because his offenses indicated a need to protect the

---

[14] And, indeed, Herrera-Genao continues to make the same arguments after trial on appeal.

21

public due to the fact they "involved actual violence or serious threat of violence."[15]  *See* U.S.S.G. § 5K2.13.

Fifth, Herrera-Genao claims that the District Court should have granted his motion for a downward departure for aberrant behavior given his lack of criminal history. However, the District Court did not abuse its discretion, as Herrera-Genao's request could properly be denied pursuant to the advisory Guidelines, because such a departure is only available where "the defendant committed a single criminal occurrence or single criminal transaction" that, *inter alia*: (1) "was committed without significant planning," and (2) "was of limited duration."  U.S.S.G. § 5K2.20(b).  Here, Herrera-Genao was convicted of four robberies and a fifth attempt, each of which required significant planning.

Sixth, Herrera-Genao claims that the District Court should have granted his motion for a downward departure based on an overstatement of criminal history.  Herrera-Genao argues that a Criminal History Category of I over-represented the seriousness of his basically non-existent criminal background.  However, the District Court did not abuse its discretion, as Herrera-Genao's request could be properly denied pursuant to the advisory Guidelines, which specify that "[a] departure below the lower limit of the applicable guideline range for Criminal History Category I is prohibited."  U.S.S.G.

---

[15] Even if this were not the case, evidence presented by Herrera-Genao's doctors as to diminished capacity was counterbalanced by: (1) the findings of a court-appointed psychologist that Herrera-Genao was malingering, and (2) evidence that Herrera-Genao organized and led complicated bank robberies.

22

§4A1.3(b)(2)(A).

Seventh, Herrera-Genao claims that the Court should have given greater weight to his arguments for mitigation during consideration of the Section 3553(a) factors. It is well-established that district courts must engage in "a true, considered exercise of discretion … including a recognition of, and response to, the parties' non-frivolous arguments" and consideration of the factors set forth by the U.S. Congress at 18 U.S.C. § 3553(a). *United States v. Jackson*, 467 F.3d 834, 841 (3d Cir. 2006).[16] We therefore look to whether the District Court meaningfully applied the Section 3553(a) factors to the circumstances of this case. *United States v. Hankerson*, 496 F.3d 303, 308 (3d Cir. 2007). We have reviewed the record and are satisfied that the District Court was fully familiar with Herrera-Genao's arguments for mitigation and took them into careful consideration, resulting in a sentence at the low end of the advisory Guidelines range for the portion of Herrera-Genao's sentence that was not mandatory. We conclude that Herrera-Genao fails to demonstrate that the discretionary portion of the District Court's sentence was unreasonable.

**B.**

Herrera-Genao and Berrios claim that their mandatory sentences (110 years and 85 years, respectively) for possession of a firearm in connection with a series of bank

---

[16] However, the District Court is not required to discuss arguments made by a litigant which are meritless, nor to discuss and make findings as to every factor if the record makes clear the District Court took all the factors into account in sentencing. *Jackson*, 467 F.3d at 841.

robberies constitute cruel and unusual punishment in violation of the Eighth Amendment of the U.S. Constitution.[17]  While it may or may not be true that societal perspectives on mandatory minimum sentences are evolving, *see Graham v. Florida*, 130 S.Ct. 2011 (2010), at present these claims run afoul of the current law of this Circuit.  *United States v. Walker*, 473 F.3d 71, 79-81 (3d Cir. 2007) (citing *United States v. Couch*, 291 F.3d 251, 255 (3d Cir. 2002) ("It is likely that Congress meant ... to protect our communities from violent criminals who repeatedly demonstrate a willingness to employ deadly weapons by punishing them more harshly.")); s*ee also Harmelin v. Michigan*, 501 U.S. 957, 994-95 (1991) (rejecting a "required mitigation" claim where defendant had no prior felony convictions and upholding a mandatory life sentence for first-time drug offender); *United States v. Arrington*, 159 F.3d 1069, 1073 (7th Cir. 1998) (upholding consecutive sentences totaling 65 years mandated for violations of Section 924(c) and noting that "Congress has mandated harsh penalties, particularly for defendants … who repeatedly use guns to commit serious crimes"); *United States v. Farmer*, 73 F.3d 836 (8th Cir. 1996) (rejecting Eighth Amendment challenge to a mandatory life sentence where defendant participated in attempted armed robbery of a convenience store).  Accordingly, we find no plain error.

## C.

---

[17] The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."  U.S. CONST. AMEND. VIII.

Lynn claims that his sentence is unreasonable because the District Court did not sufficiently account for his arguments for mitigation. However, the record reflects that the District Court considered those arguments, performed a sufficient Section 3553(a) factor analysis, and, as a result, reduced the non-mandatory portion of Lynn's sentence by thirty-eight months below the advisory Guidelines range.[18] Given that the Court addressed Lynn's mitigation claims, and acknowledging the seriousness of the crimes of which Lynn was convicted, we find that Lynn's sentence was not unreasonable. The District Court did not abuse its discretion by declining to vary even further below the advisory Guidelines range.

**D.**

All Defendants raise an additional sentencing issue for the purpose of preservation. Specifically, they raise the question of whether the "except clause" of 18 U.S.C. § 924(c)(1)(A), which provides an exception to the imposition of a mandatory minimum sentence "to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law," prohibits the stacking of mandatory minimum terms where a jury returns more than one guilty verdict on multiple Section 924(c) counts. This claim fails pursuant to *Deal v. United States*, 508 U.S. 129 (1993),

---

[18] Like Herrera-Genao, Lynn was the recipient of mandatory consecutive sentences – in this case, seven years for Count Seven and 25 years for Count Nine. As a result, Lynn's advisory Guidelines range was 519 to 552 months. The District Court, in its discretion, sentenced Lynn to 481 months.

and *Abbott v. United States*, 131 S.Ct. 18 (2010).

## IV.

We will affirm all judgments of conviction and sentence.