NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4743
_____

FRANCISCO HERRERA-GENAO,
Appellant

v.

UNITED STATES OF AMERICA
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-12-cv-06119)
District Judge:  Honorable Anne E. Thompson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 19, 2016

Before:  FISHER, CHAGARES and COWEN, *Circuit Judges*.

(Filed:  February 3,2 016)
_____

OPINION*
_____

_____

*    This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does
     not constitute binding precedent.

1

FISHER, *Circuit Judge*.

Francisco Herrera-Genao appeals from the denial of his motion to vacate his criminal sentence under 28 U.S.C. § 2255 on the basis of his counsel's alleged ineffective assistance during plea negotiations. For the reasons that follow, we will affirm.

I

We write principally for the parties, who are familiar with the factual context and legal history of the case. Therefore, we set forth only those facts that are necessary to our analysis.

In 2007, Herrera-Genao and three coconspirators committed four armed bank robberies in New Jersey. Although the facts varied slightly in each case, the robberies unfolded in a similar manner. In each instance, the robbers arrived at the target bank in stolen cars and entered it wearing masks and carrying handguns or rifles. Each time, Herrera-Genao jumped over the counter, pointed his handgun at bank employees, and demanded money. In three of the four robberies, Herrera-Genao fired his handgun at the ceiling or wall to frighten the employees and customers, injuring a teller in one instance. After the cash was placed in a bag, the robbers fled the bank and met their getaway driver.

Herrera-Genao and his coconspirators planned a fifth robbery. By this time, however, the FBI had identified them as the perpetrators and was conducting surveillance. As they arrived near the bank, agents moved in to arrest them. Two of Herrera-Genao's coconspirators were arrested. During the arrest, an FBI special agent

was shot and killed by friendly fire. Herrera-Genao temporarily escaped into a nearby wooded area, but was apprehended the following morning.

Herrera-Genao was charged in the United States District Court for the District of New Jersey with one count of conspiracy to commit bank robbery, four counts of armed bank robbery, one count of attempted bank robbery, and five counts of possession of a firearm in furtherance of a crime of violence under 18 U.S.C. § 924(c). Two of Herrera-Genao's codefendants were charged in the same indictment. A fourth member of the group cooperated with the government and separately pleaded guilty.

Herrera-Genao's trial counsel, Martin Matlaga, notified the court that he intended to present an insanity defense. Before trial, a forensic psychologist from the Bureau of Prisons and a psychiatrist and a psychologist retained by Herrera-Genao examined Herrera-Genao for competency to stand trial and for criminal responsibility at the time of the offenses. The experts diagnosed Herrera-Genao with several mental disorders and found that his IQ was in the bottom one percent of the population. Each of the experts opined, however, that Herrera-Genao's psychiatric issues did not meet the standards for incompetence or insanity under federal law.

In light of the weakness of the insanity defense—and because Herrera-Genao faced a mandatory sentence of at least 110 years if convicted on all counts[1]—Matlaga sought to

---

1.  The first conviction for discharging a firearm during a crime of violence carried a mandatory minimum sentence of 10 years' imprisonment, consecutive to any other penalties imposed. 18 U.S.C. § 924(c)(1)(A)(iii). Each of the four subsequent convictions carried a mandatory consecutive sentence of at least 25 years' imprisonment. *Id.* § 924(c)(1)(C)(ii).

negotiate a plea deal with the government. Matlaga and lead prosecutor Charles McKenna discussed a plea agreement that would have resulted in 45 years' imprisonment. This was not a formal offer because it was contingent on all three defendants' agreeing to plead guilty and on the approval of the United States Attorney, the FBI, and the family of the agent killed during the apprehension. Matlaga urged Herrera-Genao to accept the 45-year deal if approved, but Herrera-Genao rejected the proposed terms.

The case went to trial, and a jury convicted Herrera-Genao of all 11 counts. The district court sentenced Herrera-Genao to 1,407 months' imprisonment. We affirmed his convictions and sentence on direct appeal.[2]

Herrera-Genao filed a motion to vacate his sentence under 28 U.S.C. § 2255, arguing, among other things, that his trial counsel was ineffective during plea negotiations. The district court held two evidentiary hearings and issued an opinion denying the motion. The district court granted a certificate of appealability with respect to Herrera-Genao's ineffective assistance claim. This timely appeal followed.

## II[3]

The sole issue in this appeal is whether Herrera-Genao's Sixth Amendment right to counsel was violated by the alleged ineffective assistance of Matlaga during plea negotiations. Our review of the district court's legal conclusions is plenary, and we

---

2. *Herrera-Genao v. United States*, 419 F. App'x 288 (3d Cir. 2011).

3. The district court had jurisdiction under 28 U.S.C. § 2255. We have jurisdiction over this appeal under 28 U.S.C. §§ 1291 and 2253.

review the district court's factual findings for clear error.[4] To establish a constitutional violation for ineffective assistance, a petitioner must show that counsel's representation both "fell below an objective standard of reasonableness"[5] and "prejudiced the defense."[6] A court need not address the reasonableness of counsel's performance if the defendant was not prejudiced.[7]

In the context of plea negotiations, objectively reasonable representation requires that counsel "give a defendant enough information 'to make a reasonably informed decision whether to accept a plea offer.'"[8] A defendant can show prejudice if, due to counsel's deficient advice, the defendant lost the opportunity to accept a plea agreement and trial led to a more severe sentence.[9] The defendant must therefore demonstrate a reasonable probability that he would have accepted the plea agreement, the government would not have withdrawn it, and the court would have approved its terms.[10] If no plea offer was made, however, this issue "simply does not arise," and the defendant cannot demonstrate prejudice.[11]

---

4.   *United States v. Bui*, 795 F.3d 363, 366 (3d Cir. 2015).

5.   *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

6.   *Id.* at 687.

7.   *Id.* at 697.

8.   *Bui*, 795 F.3d at 367 (quoting *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013)).

9.   *Lafler v. Cooper*, 132 S. Ct. 1376, 1387 (2012).

10.  *Id.* at 1385.

11.  *Id.* at 1387; *see Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000) ("[T]o establish … prejudice, the petitioner must begin by proving that a plea agreement was formally offered by the government.").

Although the district court found that Matlaga's performance was unreasonable in light of Herrera-Genao's mental difficulties, we begin our analysis with the prejudice prong of *Strickland*. The district court found that Herrera-Genao did not demonstrate the existence of a formal plea offer and that he would not have accepted the 45-year deal even if it had been formally offered.[12] Herrera-Genao argues that these findings were clearly erroneous.

After reviewing the record, including the two evidentiary hearings held by the district court, we conclude that the district court's finding that there was no formal plea offer is not clearly erroneous. A finding of fact is clearly erroneous when we are "left with the definite and firm conviction that a mistake has been committed."[13] Thus, we will not reverse the district court as long as its "account of the evidence is plausible in light of the record viewed in its entirety," even if we would have weighed the evidence differently.[14]

There is no dispute that the government never tendered a written plea offer to Matlaga or Herrera-Genao. The witnesses who testified at the evidentiary hearings presented two competing stories about whether there was a formal oral plea offer. Counsel for one of Herrera-Genao's codefendants testified that there was a definite "verbal offer" that was "spelled out in some detail."[15] Matlaga testified that there was a

---

12. App. 18.

13. *United States v. Lowe*, 791 F.3d 424, 427 (3d Cir. 2015).

14. *Id.* (internal quotation mark omitted).

15. App. 177.

6

plea offer for 45 years' imprisonment, but he acknowledged that it was contingent on FBI approval and all defendants' pleading guilty.[16] McKenna testified that the ultimate decision of whether to offer a plea agreement was to be made by the United States Attorney in consultation with the FBI and the deceased agent's family. McKenna believed that the FBI wanted the case to go to trial and the defendants to receive the maximum penalties. He proposed the 45-year deal with the idea that the United States Attorney might have been able to convince the FBI to accept it if all the defendants pleaded guilty. He testified that these plea discussions were only preliminary, however, and that he never made a definite offer. The district court did not clearly err by accepting the credible testimony of McKenna, supported by other evidence in the record, that there was no definite plea offer.[17]

Similarly, the district court did not clearly err by finding that Herrera-Genao was unwilling to accept a 45-year plea deal even if it had been offered. Herrera-Genao testified that he would agree to a 20-year sentence but "worst to worst" would accept the 45-year offer.[18] Matlaga testified that, despite his efforts to convince Herrera-Genao to

---

16. A letter in the record from Matlaga to Herrera-Genao stated, "'Guilty' plea offer: 45/37 years (if the U.S. attorney can convince the FBI to approve it)." App. 587. The 37 years in the letter referred to the minimum that could be served considering good time and other factors. App. 277.

17. *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

18. App. 217.

accept the 45-year deal, Herrera-Genao was never willing to accept it.[19] Based on this record, the district court's assessment of the evidence is plausible, and we have no basis to upset the district court's decision.

Herrera-Genao did not show that he was presented with a definite plea offer, and he did not demonstrate a reasonable probability that he would have accepted the 45-year plea deal even if it had been offered. Therefore, he is unable to show that he was prejudiced by his attorney's allegedly unreasonable performance.

III

For the reasons set forth above, we will affirm the order of the district court denying Herrera-Genao's motion to vacate his sentence.

---

19. App. 283.